Tinkle *v.* Dunivant.

R. B. TINKLE *v.* BELLE DUNIVANT, by next friend.

1. NEW TRIAL. *When given for excessive damages.* A new trial will not be awarded upon the ground of excessive damages, unless the damages are so large as to evidence passion or prejudice on part of the jury.

2. SAME. *Tampering with juror.* If a juror is tampered with by a party interested in the result of a suit, and the same is known to the opposing counsel, either before the selection of the said juror to try the case, or before the introduction of any testimony, a new trial will not be granted. The objection should be made when the jury is empanelled, or as soon thereafter as the counsel are apprised of the fact.

3. SAME. *Verdict.* A verdict is not vitiated by the fact that each juror put on paper the amount of damages he was willing to award, and the sum divided by twelve, the result being the amount given in the verdict, provided no previous agreement had been made to abide the result thus obtained. A new trial will not be awarded upon this account.

4. MASTER AND SERVANT. *Rights and remedies.* A master has no right to enforce his commands upon his servant or employe by the use of force or personal chastisement. His remedies for any dereliction or breach of contract are either to bring action against the employe or discharge him.

FROM GIBSON.

Appeal in error from the Circuit Court of Gibson county. JNO. T. CARTHEL, J.

HILL & WILLIAMSON, J. T. CURTIS and McDEAR-MON & TYREE for Tinkle.

COOPER & HAYS for Dunivant.

FREEMAN, J., delivered the opinion of the court.

This is a suit for recovery of damages for an

alleged assault and battery by Tinkle on the plaintiff. The jury found a verdict in favor of plaintiff and assessed her damages at $500, from the judgment on which there is an appeal in error to this court.

Several errors are assigned, which we proceed to dispose of. First, it is said, the damages are excessive. While they are probably large for the actual amount of injury, we can not say they are so large as to evidence passion or prejudice on the part of the jury. The proof on the part of the plaintiff, which is evidently credited by the jury, is substantially, that plaintiff, a girl of about eighteen years of age, lived in defendant's house, as a "house servant of all work," kept probably to assist Mrs. Tinkle in her general household duties. It seems there was an infant child of a few months old in the family which required to be fed by means of milk drawn from a bottle, the mother not being able to give it nourishment from the breast. The child seems to have been fretful and required the bottle of milk during the night of the trouble, when Tinkle went into the room adjoining the family room and called plaintiff to get up and come into the other room. It is probable she failed to do so, as he says, after being called more than once; she claims that she had not heard the calls. The child continuing to cry, defendant took an oil lamp in his left hand, went into the room where plaintiff was in bed with a niece of his, and seized her by the arm, pulled her from the bed on the floor, and as he admits, "*tapped*" her on her side with his foot. She insists he kicked her with considerable

severity, and the weight of the evidence tends to support her view of the facts. It is shown that the act was of such a character that the niece of defendant raised up in the bed and said to him to stop. The plaintiff says she was hurt in her side and had felt pain as the result at times up to the trial. She was also somewhat bruised on her arm by the pressure of the hand in pulling her out of bed; she was in her night dress, and her gown is shown to have been torn. While there has been no serious permanent damage, we can not say the jury erred in believing the plaintiff's theory of the case, and so believing, the damage can not be held, as we have said, to be so excessive as to require us to reverse for this cause.

It is next insisted his Honor should have granted a new trial on affidavits and proof showing that Lannum, the next friend of plaintiff, having the conduct of the suit, had attempted to tamper with two members of the jury. It is shown that after one of the jurors had been summoned, he went to him in his field and said, "I understand you have been summoned as a juror, and if you should get on the jury in the case of Belle Dunivant against Tinkle, I want you to do the best you can for the girl," and then added, "if she got a pretty good pile out of Tinkle, that he, Lannum, would buy Dabney's land." The juror, on his examination, says he told Lannum he would be governed by the charge of the judge and the evidence in the case. He further stated, that on the day the case was taken up for trial, Lannum again approached this juror and said to him, he "wanted

him to treat Belle Dunivant as though she was his own sister, and do the best he could for her; that she had a lump in her side as big as his fist." It is shown by another juryman, that he saw Lannum, talking to the juryman and one Lewis, at the noon recess of the court, on Tuesday, the day of commencement of the trial; that the juror told him that Lannum had talked to him in substance as we have stated, and this juryman says that he communicated the facts to defendant's counsel at once, and that this all occurred before any testimony was introduced before the jury, the examination of witnesses not commencing till after dinner. He also told counsel, in this connection, he had seen Lannum talking to another juryman, Lewis, during the recess of the court.

We have a clear case of an effort on the part of the next friend conducting plaintiff's cause to corruptly or improperly influence the jury, but it is also shown this was done before the evidence was introduced, and that to the knowledge of defendant's counsel. With this knowledge, they did not ask that the juryman be set aside and another substituted, but proceeded with the trial, attempting to develop the facts before the jury by asking Lannum if he had talked to the juryman when he was introduced as a witness.

This court held, in the case of *Cantrell* v. *The State*, 1 Legal Reporter, 193–4, that where a juryman was incompetent by having formed and expressed an opinion and counsel's attention was called to it, "that he should have at once objected to the juryman, and presented the facts to the court, when the juryman could have been

set aside." We then said, "a party can not remain quiet under such circumstances, and by his conduct accept the juror after the objection comes to his knowledge, especially when the fact is known before the jury is made up or trial commenced, and then have a new trial when the verdict is found against him." We think this principle sound and adhere to it. It is conclusive of the objection on this point. As to the matter said to juryman Lewis, it amounted to nothing calculated to affect his verdict. It seems Lewis and Lannum were unfriendly, and Lannum remarked to him, "you are mad at me, but don't go against the girl because you are mad at me." We can not see this could tend to swerve the juror from his duty, though the attempt to talk with the juryman was reprehensible and indelicate to the extreme. We do not think, however, this should vitiate the verdict in this case.

It is next insisted the verdict is what is known as a gambling verdict; that the result was obtained by each juryman putting on a slip of paper the amount of damages, and this was divided by twelve, the result being the amount given. The rule in civil cases on this question, as found in our cases is, " that a jury may, if they choose, make the experiment, such as was had in this case, and ascertain the result, and if this is afterward agreed to as satisfactory, it may be returned as their verdict. But if they fail to agree in the usual way, and then agree to try the process referred to, and that they will abide the result, and do so return as their verdict, the verdict will

Tinkle *v.* Dunivant.

be set aside": *Harvey* v. *Jones,* 3 Hum., 159; *Baker* v. *Bennett,* 1 Hum., 457; *Johnson* v. *Perry,* 2 Hum., 567.

There was no agreement in advance to stand by the result of the experiment in this case; on the contrary, a vote was taken on the question of adopting $500 as the verdict, ten jurymen voting to do so, and the others yielding after some discussion, as the best they could do, as they say. There was no error in this. His Honor was requested to charge the jury, "that if plaintiff was a minor under the age of twenty-one years, and was in the employ of defendant as a servant, he would have the right to require her to obey his reasonable commands, and in case of disobedience, to use moderate force to compel her to do so." To this he replied, "this request is the law, but defendant would not have the right to pull her out of bed and kick her." In this he erred against the plaintiff, so far as the first part of the proposition goes. A master has no right to enforce his commands upon his servant or employe by the use of force or personal chastisement. We so held in the case of *Cooper* v. *The State,* 8 Bax., 325. "A master has the right to use moderate corporeal correction in case of an offending apprentice": *Commond* v. *Baird,* 1 Ask., Pa. Rep., 267. But this right is denied as respects ordinary hired servants: 2 Kent's Com., 261. The only civil remedies a master has for idleness, disobedience or other dereliction of duty, or breach of contract on the part of a servant, are either to bring an action against him or discharge him from service:

Wait's Act. and Def., vol. 4, page 500, and authori-
ties cited.

It is insisted, however, that the judge invaded the
province of the jury and violated the principle as held
in *Johnson* v. *The State*, 2 Hum., 283, and other cases,
in what he stated in the latter part of the proposi-
tion; that is, that "he would not have the right to
pull plaintiff out of bed and kick her." That is a
case involving the question whether the parent had
inflicted reasonable or unreasonable chastisement on his
child. The court said to the jury, that "if they
believed the facts, the conduct of the parent would
clearly exceed moderation and reason, and would be
barbarous in the extreme." This was to give the
conclusion to be drawn from the facts on the vital
issue in the case, which it is the province of the jury
to do. But here his Honor simply gave as a rule
of law to guide the jury, that while a master might
resort to personal force to procure obedience to his
commands, he would not be authorized to go so far
as to pull her out of bed and kick her. He was
simply ruling that such violence, if inflicted, was im-
moderate and unreasonable. But, inasmuch as the de-
fendant had no right to inflict any personal violence
on plaintiff at all, the question of excess was a mere
abstraction. Whether he had kicked her and pulled
her out of bed, we assume was, by the main charge,
which is not presented or excepted to, left fairly, no
doubt, to the jury to decide on the testimony. This
being so, his Honor's opinion as to whether these
facts constituted excessive punishment or not, was en-

tirely immaterial to any issue to be decided by the jury. In fact, there was no controversy in the testimony as to the fact that he had pulled her out of bed and kicked her. He was clearly liable for this, and the jury were the proper judges of the measure of damages to be given for such conduct.

We see no reversible error in this. The result is, the judgment must be affirmed.