TENNESSEE ELECTRIC POWER CO. v. SIMS. NO. 2.—108 S. W. (2d), 801.

Eastern Section. July 3, 1937.

Petition for Certiorari denied by Supreme Court, October 2, 1937.

234

Brown & Spurlock, of Chattanooga, for plaintiff in error.

Lee M. Jeffers, of Oakdale, and H. K. Pemberton, of Huntsville, for defendant in error.

AILOR, J. This is a suit for damages for the loss of household furniture resulting from the burning of the house in which plaintiff below, defendant in error here, lived. The action is based upon alleged negligence of defendant below, plaintiff in error here, in the maintenance of its wiring for supplying electric current for the use of plaintiff. The particular charges of negligence will be referred to in connection with a treatment of the various issues raised.

The proven facts may be summarized in time sequence as follows: First, plaintiff's family experienced difficulty with radio reception over an extended period of time: second, it was concluded that this interference with radio reception resulted from some defect in the electric wiring of the house and defendant company was repeatedly notified of this fact; third, the house in which plaintiff and his family lived caught fire and burned down.

Upon the trial of the cause defendant made a motion for a directed verdict at the close of plaintiff's proof, and also at the close of all of the proof. This motion was denied, and the jury returned a verdict for $1,500. Motion for new trial was denied, and an appeal in error has been prosecuted to this court. It is insisted here that there was no evidence to carry the case to the jury and no evidence to support the verdict of the jury.

The declaration contained a single count. After setting up the fact that plaintiff was supplied with electrical current by defendant, the declaration averred negligence in the language following:

"Plaintiff further avers that the wiring leading from his residence to which defendant attached its meter was in a faulty condition, and that the defendant or its agents who installed the meter well knew this fact or should have known it, nevertheless, said defendant by its agents did connect its meter to the wiring and forced its high powered voltage current into the house of the plaintiff, thereby, causing the damages to the plaintiff herein complained of."

The above constituted the only specific charge of negligence in the declaration, though it did contain certain averments as to the duty of defendant, which was to the effect that it owed the duty to maintain its electrical system in such condition and operate it in such manner as would leave the home of plaintiff reasonably safe, and that it had failed to discharge this duty.

In passing upon motion for peremptory instructions the trial judge

indicated that he would have sustained same, but for the testimony of the wife of plaintiff. Her testimony, which appears to have been given considerable weight by the trial judge, is rather brief, and we quote the most material portions of it. After she had related the facts about a brief visit to her neighbors, she was asked if she noticed any sign of fire on her return, to which she answered:

"I noticed the smoke up around the roof of the house a little smoke.

"Q. Inside or outside? A. Well, when I first noticed, it was just under the roof of the house around, just around, the smoke looked something like a fog.

"Q. Where was that, what part of the house? A. It was all around the house when I noticed the fog like around the house, I thought it was from the rain because it had been raining. . . .

"Q. All right, when you entered the house what did you notice if anything out of the ordinary? A. When I ran in the house I tried to go in the kitchen to see where the fire was, but I could not get any further than the breakfast room, and I saw the fire then coming through the wall over the meter and over the frigidaire, you see, the back of the frigidaire.

"Q. Of course, you could not see the meter. Go ahead? A. The frigidaire was in the breakfast room, the back of this way and the back of the stove this way (illustrating).

"Q. Yes? A. Well, the meter was on the wall this way and it was over the meter, going through the wall, a blaze about the size of a water bucket.

"Q. Inside? A. Yes, sir; inside of the breakfast room.

"Q. And from around from where the meter was? A. Yes sir."

Both Mr. and Mrs. Sims testify that they made numerous complaints to the electric company of trouble with their radio reception, and they insist that they gave notice of trouble with the wiring. But in only two instances does it appear as to what specific defects they complained of. In one instance some trouble had developed in one of the drop cords, that is, the wiring suspended from the ceiling to the light fixture. This trouble was remedied by plaintiff himself. The other specific trouble reported to the electric company was in one of the burners or heating units of the electric stove. An inspector responded to this notice, and informed the wife of plaintiff that it would be necessary to replace the old unit with a new one as the old one was burned out.

It is earnestly insisted on behalf of plaintiff that this evidence makes out a case of culpable negligence against defendant. While it is just as earnestly insisted on behalf of defendant that there is no evidence of culpable negligence upon which a verdict and judgment could be based. Plaintiff insists that the proof establishes the fact that the fire was caused by misplaced electricity; and that the

236

rule of res ipsa loquitur applies. While the defendant insists that it is not shown that the fire resulted from electrical sparks or misplaced electricity, and, therefore, the jury would not be privileged to infer that it resulted from any negligence on its part.

Electricity has been described as being potentially the most dangerous of the utilities commonly used today, lurking unsuspectingly in the simple and harmless wire and giving no warning of its presence. And in the location of its wires an electric company has been held obligated to either insulate its wires or place them beyond the range of persons rightfully using highways and other public places, and to exercise the utmost care to keep them in a safe condition. Geismann v. Mo.-Edison Electric Co., 173 Mo., 654, 73 S. W., 654.

The substance of the rule laid down in the above case seems to be that almost any harm from electricity which could humanly have been avoided would render the company liable in damages. This rule seems to have followed the development of devices capable of indicating trouble on lines the instant they develop. In the case of Sanders v. City of Carthage, 330 Mo., 844, 51 S. W. (2d), 529, the court held that it was the duty of an electric company to have its switchboard equipped with a ground detector, where it appeared that a ground detector would have indicated a break in a wire, in the exercise of that high degree of care required by law. And it has been held a question for the jury where an employee of an electric company had closed a circuit breaker after it had "Kicked out" and injury resulted, it appearing that a circuit breaker is an automatic device which cuts off the current when a line breaks and there is a ground.

In the case of Osborne v. Tennessee Electric Power Co., 158 Tenn., 278, 12 S. W. (2d), 947, 950, it appeared that the power company was notified that a building very near its high-voltage wires was on fire, and that the flames were reaching the wires. The current was not turned off, but two employees were sent from a distance to the scene of the fire. Before their arrival a wire had burned through and electrocuted a fireman. In holding that a question for the jury was presented, the court said:

"We do not undertake to announce any hard and fast rule, since each case must depend upon its own facts. . . . We do not mean to say that in every instance the defendant should cut off its current upon being advised that its line is endangered. . . . It is also proper for the jury to take into consideration the means and methods by which the current is shut off, the necessary time it takes, and the territory and electrically run plants that would be affected thereby."

But, while the dangers incident to the presence of high-voltage electric current are great, still the distributor of current will not be held liable without negligence. Neither plaintiff nor his wife point out any specific defect in the wiring, but they testify to trouble and

annoyance in radio reception and they conclude that it was caused by defects in the wiring of their house. It appears that the house in question had been wired for upwards of ten years at the time of the fire, and the party making the installation was unknown. But the mere fact that it had been in service for that period of time without trouble is some indication that it was properly installed. The proof shows that the service lines entered the house through metal conduits or cables, going to the meter center, and that three different circuits radiated from the meter center. The electric stove was served by a separate circuit, the Frigidaire by a separate circuit, and the lights on still another circuit. All three of these circuits were working without trouble at the time of the fire, or immediately prior thereto. The only trouble ever experienced with the lighting circuit was the burning out of a single bulb. And, with the general experience in the use of electric lights in homes and in offices, we think the court warranted in taking judicial notice of the fact that bulbs frequently burn out. And we think the fact that only one bulb burned out on this circuit over a period of eleven months is some indication that it was in good order. It is admitted that the circuit supplying the Frigidaire was working properly, and the only complaint about the stove circuit is that one of the heating units had burned out. The cause of this is not shown, and we assume that it resulted from natural causes, since there is no insistence that it resulted from defective wiring or other unnatural causes.

It further appears from the record that all of these circuits leaving the meter center, with the exception of the light circuit, were inclosed in cables, and that each line was properly fused against the dangers resulting from a short circuit. The fuses protect against the entry of an excess charge of electricity, and are so constructed that they burn out when subjected to an excess load above that normally used. It is not insisted that there was a sufficient defect in the wiring of the house in question to burn a fuse out, or that the lights were excessively bright. In fact, there is no proof of any defect in the wiring other than the conclusions of plaintiff and his wife to the effect that there was trouble in the wiring, based upon the fact that they had poor radio reception. And it is shown without dispute that the radio difficulties which they had could come from numerous sources, not reasonably chargeable to the wiring of the house. It could come from defects in the radio itself, from the operation of defective electrical appliances, and other sources not necessary to enumerate. So that we think the proof of defective radio reception constitutes no proof of defective wiring without more specific description, and that the conclusion that the trouble was caused by defective wiring was an unwarranted conclusion and an invasion of the province of the jury.

The lighting circuit of the house in question was concealed,

238

and, as above stated, was not installed by defendant. We know of no duty resting upon a company supplying electricity to go to the expense of tracing the concealed wiring through a house for the purpose of determining its condition, especially where it had assumed no responsibility for its installation, as in the case before us, and yet that appears to be the insistence of plaintiff. And, while an electric company is onerated with a duty commensurate with the danger of the commodity it distributes, still it is not an insurer of the condition of wiring within a house. Its duty is to safely deliver current to the meter center, and there turn it over to the customer, subject to such added duty as it might assume, and subject to the further duty to use that precaution with which it is onerated to guard against injuries resulting from dangerous conditions brought to its attention.

■ We think the rule of res ipsa loquitur has no application in the instant case, for the reason that it is not shown that the fire resulted from the presence of electricity in the house. It is true that plaintiff and his wife try to eliminate other possible causes, but we think they have failed to show with sufficient certainty that the fire could not have been caused by other agencies. From the testimony of Mrs. Sims we infer that the fire must have originated within the walls of the building. It burned through in the breakfast room, some distance away from the meter box. There is no attempt to show the nature of the material of the building in the vicinity of the meter box or the nature of the material where the fire burned through. Wherever the fire originated, it is reasonable to assume that it followed the course of the most inflammable material, and the point at which it first burned through might not indicate the place of its origin, and in order to fix liability in this case it would be necessary for the jury to first infer that the fire started in the vicinity of the wiring, that it resulted from the presence of an electric spark, and that this spark resulted from defect in the wiring chargeable to the negligence of defendant. In order to arrive at this conclusion it would be necessary to add inference to inference in such succession as has not been permitted in any case of which we have knowledge.

■ The rule of res ipsa loquitur is frequently applied in cases against electric companies, but an examination of the cases, so far as we have been able to find, discloses that liability has been dependent upon showing the injury to be the result of some negligence on the part of defendant, or at least facts from which they jury might infer negligence by applying the rule. The rule is adequately stated in Glasco Electric Co. v. Union Electric Light & Power Co., 332 Mo., 1079, 61 S. W. (2d), 955, 957, as follows:

"The res ipsa loquitur doctrine finds frequent application in cases against electric companies, and, when in such cases the petition charges general negligence only and the facts and circumstances

. . . show that, without fault on the part of the plaintiff, the injury or damage complained of was caused by the escape of electricity from wires and appliances under the exclusive control and management of such company and the occurrence is such as does not ordinarily happen if those having such control and management use proper care, a presumption or inference of negligence or want of proper care on the part of defendant electric company, arises, and the weight of the inference as well as the weight of such explanation, if any, the defendant makes, is for the jury.

It is not made to appear that the injury complained of in this case resulted from the escape of electricity from wires under the exclusive control and management of the defendant company. In fact, no attempt is made to locate the source of the fire's origin other than that it burned through in the breakfast room and was burning in the vicinity of the meter center. We are aware of the fact that it is possible for fires to be started by escaping electricity, and that it would be most difficult under certain circumstances to definitely locate the cause of the same. But at the same time we are aware of the numerous other ways that fires originate, both through negligence and intentional. And, in view of the fact that the wiring in this house had been giving efficient service over a long period of time, and in view of the fact that it is not shown to have come from wiring within the exclusive control of defendant, we think that liability must be denied. We have reached the conclusion that the motion for a directed verdict should have been granted. The assignment of error to the effect that there was no evidence to support the verdict is sustained, the motion for peremptory instructions is allowed, and the suit is dismissed.

Portrum and McAmis, JJ., concur.