**KINGSPORT UTILITIES, INC.,**
Appellant,

v.

**Jon A. LAMSON, Appellee.**

**No. 13339.**

United States Court of Appeals
Sixth Circuit.

July 22, 1958.

554

- Ernest F. Smith and Edwin O. Norris (of Penn, Hunter, Smith & Davis), Kingsport, Tenn., for appellant.

Howard E. Wilson (of Wilson, Worley & Gamble), Kingsport, Tenn., J. W. Worley, Kingsport, Tenn., on brief, for appellee.

Before McALLISTER and MILLER, Circuit Judges, and CECIL, District Judge.

CECIL, District Judge.

This action was filed in the District Court by Jon A. Lamson as plaintiff, through his father and next friend, Earl M. Lamson, to recover damages for injuries sustained by an electric shock alleged to have been caused by the negligence of the defendant, Kingsport Utilities, Inc.

The facts are as follows: The accident by which the plaintiff was injured occurred on the evening of June 20, 1955, in a residential area known as Sevier Addition to the City of Kingsport, Tennessee. The plaintiff lived with his father and mother at the corner of Walnut avenue and Putnam street. Alex Williams was a next door neighbor of the Lamsons. Mr. James Sora lived in a house fronting on Putnam street and his side yard was adjacent to the rear of the lots occupied by the Lamsons and Alex Williams. Previous to the night of the accident, Mr. Sora had constructed a tower upon which was mounted a T. V. antenna, the entire length of which was 52.25 feet. He had also constructed a concrete base upon which he expected to erect the tower and antenna by the use of a universal joint. On the evening in question, at about dusk, Mr. Sora went to the home of Mr. Lamson and requested him to come over and assist him in erecting the tower and antenna. When Mr. Lamson arrived on the scene, he found there Mr. Sora's brother-in-law, a young man about 18 or 19 years old. Shortly thereafter, Mr. Alex Williams came to the scene of activity. Just before the adults attempted to put the tower and antenna in place, five boys, including the plaintiff, came up to watch and possibly assist. In addition to the plaintiff, there were Jerry Bass, Albert Russell, Jim Hall and Jerry Rasnik. Jon Lamson was 14 years of age at this time and three of the other boys were approximately the same age. Albert Russell was about 18. The four adults first attempted to walk the tower up as would be done with raising a ladder. They made a second attempt and in this second attempt, the plaintiff and some of the other boys were holding guy wires attached to the tower for the purpose of steadying it. When the tower was raised, the men lost control of it and it fell striking a high tension wire. The plaintiff received a severe shock and was knocked unconscious. One of the boys, Jerry Rasnik, was killed in the accident. The plaintiff was given artificial respiration and was taken to the hospital from which he was discharged two days later. The high tension wire in question was mounted on poles which are on a three foot easement running across the rear of the lots of the Lamsons and Alex Williams. There was a pole on which was mounted a transformer on the easement in the rear of the lot of Mr. Williams. The high tension wire was about 32 feet high at this point.

The plaintiff in his declaration charges the defendant with the following acts of negligence:

1. In transmitting a deadly electrical current over a line which was too close to the ground for safety.

2. In failing to insulate or isolate the primary lines over which it was transmitting a deadly electrical current.

3. In failing to post warnings of the high voltage being carried over the lines running through a residential section across private property and near the dwelling house located thereon.

4. In constructing the line too close to the houses built in this area.

5. In improperly designing and laying out its distribution system in that it located its primary lines across private property along interior lot lines, where the lines would be much closer to residences and be much more likely to cause death or serious personal injuries than if the defendant had located its primary lines along the public streets where it had a franchise and legal right to locate such lines.

The case was tried to a jury and resulted in a verdict in favor of the plaintiff in the sum of $10,000.00. The defendant, Kingsport Utilities, Inc., appealed.

The first claim of the appellant is that there was not sufficient evidence of negligence of Kingsport Utilities, Inc., which proximately caused or contributed to the accident to warrant submission to the jury. The trial judge, says the appellant, should have directed a verdict in favor of the defendant either at the close of the plaintiff's testimony or at the close of the defendant's testimony, or should have granted its motion for judgment notwithstanding the verdict.

One of the claims of the appellant at the time of the trial was that its line was constructed in accordance with the highest standard of the art, and that it was, therefore, not guilty of any negligence. The plaintiff offered evidence on this subject and there was credible evidence that the poles were leaning, the line sagging, a transformer installed on the wrong side of a pole and guy wires improperly placed. There was further evidence introduced through Charley King, a Civil Engineer, that had the poles been vertical and the line not sagging, the antenna, in falling, would have missed the high tension wire. There is also evidence submitted by the plaintiff through experts that a safer and more efficient plan might have been devised whereby the high tension wire would not have traversed the length of the Sora lot. It was conceded that the line was not insulated and that no signs were posted warning that high tension wires carrying high voltage were mounted on the poles. The evidence also shows that there are a number of houses in the vicinity and that it is a fast-growing community.

The trial judge gave adequate and comprehensive instructions to the jury covering the issues presented by the pleadings and the evidence. He gave particular attention to the subjects of proximate cause, intervening cause and foreseeability. In defining foreseeability he gave the definition generally accepted and recognized in Tennessee. Spivey v. St. Thomas Hospital, 31 Tenn.App. 12, 211 S.W.2d 450.

In considering this question we must adopt a view of the facts most favorable to the appellee. Coatney v. Southwest Tennessee Electric Membership Corporation, Tenn.App., 292 S.W. 2d 420, 424; Turner v. Tennessee Valley Electric Cooperative, Tenn.App., 288 S. W.2d 747.

A review of the recent decisions in Tennessee does not develop that the law on the subject matter of this case is as much in conflict as is indicated by counsel for the appellant.

Coatney v. Southwest Tennessee Electric Membership Corporation, supra, recently (February 22, 1956) decided by the Western Section of the Court of Appeals of Tennessee, presents a factual situation very similar to the case at bar.

The Court said "there were at least two questions about which the minds of

reasonable men might have differed in their conclusions from the evidence, and the issues of this cause should, therefore, have been submitted to the jury for determination. These questions are as follows:

"1st. Whether or not it was negligence for the defendant corporation to place an uninsulated high powered electric line across the private property of Mr. Cloud without notice or warning to either him or the public?

"2nd. Whether or not it was negligence to attach such dead end, high powered uninsulated electric line to a pole on Mr. Cloud's private property without anchoring such pole by guy wires or otherwise making it safe against the sagging of wires attached to it?

"An affirmative answer to either or both of these questions would have justified the further finding that such negligence was the proximate cause of Walter Buel Coatney's death."

As to foreseeability, the Court gave the rule from Spivey v. St. Thomas Hospital, supra, which is as follows: " 'So the particular harm which actually befell Spivey need not have been foreseeable. It is enough that some such harm of a like general character was reasonably foreseeable as a likely result of defendant's failure to use due care to keep him in bed and to protect him against getting out of the window in his delirium.' "

In this case a high tension wire crossed the driveway of the private property from which plaintiff's decedent was removing a portable T.V. antenna. The antenna struck the wire and the decedent was electrocuted. Crossing the driveway with the wire might be a little more dangerous than where the wire was located in the case at bar, but we do not believe that fact constituted a real distinction. The trial judge directed a verdict and the appellate court reversed, holding that jury questions were presented.

In Turner v. Tennessee Valley Electric Cooperative, supra, decided October 5, 1955, by the Western Section of the Court of Appeals, a directed verdict by the trial judge in favor of the Tennessee Valley Electric Cooperative was reversed. While a different charge of negligence is involved, the Court holds that the questions of negligence, foreseeability and contributory negligence are questions for the jury. A number of the Tennessee cases are reviewed and the Court quotes from Tennessee Electric Power Co. v. Sims, 21 Tenn.App. 233, 108 S.W.2d 801. " 'Electricity has been described as being potentially the most dangerous of the utilities commonly used today, lurking unsuspectingly in the simple and harmless wire and giving no warning of its presence And in the location of its wires an electric company has been held obligated to either insulate its wires or place them beyond the range of persons rightfully using highways and other public places, and to exercise the utmost care to keep them in a safe condition. Geismann v. Missouri-Edison Electric Co., 173 Mo. 654, 73 S.W. 654.

" 'The substance of the rule laid down in the above case seems to be that almost any harm from electricity which could humanly have been avoided would render the company liable in damages.' " [288 S.W.2d 752.]

The Supreme Court of Tennessee in Kingsport Utilities, Inc., B. & S. Welding & Supply Co. v. Brown, 299 S.W.2d 656, decided March 11, 1955, held that the issue of power companies' negligence in maintaining uninsulated high voltage wires in growing business section was question of fact for jury. The Court said at page 659: "It does seem, therefore, that it is at least a question of fact about which the minds of reasonable men might differ as to whether a utility is negligent in having such high-powered voltage in lines uninsulated, running through the business section of towns. Of course the law does not require that all lines be insulated at any particular place but only where persons are likely to be and have a right to be, for business, pleasure or otherwise." (Emphasis added.)

In conclusion, the Court said at the bottom of page 659: "The cities of Knoxville, Nashville and Memphis have filed briefs amicus curiae, complaining among other things, of the increased cost of more adequate insulation. When the likelihood of danger to human life is to be balanced against the cost of insulation, we do not think the latter is a very good argument."

More than a year later, December 7, 1956, the Supreme Court of Tennessee again spoke on this subject. In City of Chattanooga v. Rogers, 299 S.W.2d 660, the Court affirmed the Court of Appeals in upholding a verdict in favor of the plaintiff in the trial court. In the first trial between the parties, the trial judge directed a verdict. The Court of Appeals, sitting en banc, reversed. Here the Court said, 281 S.W.2d at page 509, "It follows that we must hold that it was properly a matter for the jury to determine whether, under all the facts and circumstances, the acts of the defendant in erecting and maintaining the 11,000 volt power line uninsulated at the site of the accident in this case, at a height of 27 feet, constituted negligence, and if such conduct was found to be negligent, whether said negligence was the direct and proximate cause of the death of plaintiff's intestate." Rogers v. City of Chattanooga, 39 Tenn.App. 176, 281 S.W.2d 504.

The Supreme Court said in City of Chattanooga v. Rogers, supra, "On the petition for certiorari the petition was granted largely because of the very sincere allegations of able counsel that:

" 'The law of the liability of electric utility companies for injuries sustained by one coming in contact with high tension wires is greatly confused, and some clarification must be made by this Honorable Court in order that the lower courts and the citizens may know where they stand.'

"And because it was seriously contended therein that the Court of Appeals 'and the same judge—made an exactly opposite ruling in the case of' Johnson v. Johnson City, Tenn.App., 292 S.W.2d 794. It is true different results were reached in these cases. The *facts* were entirely different. In the Johnson case there was a directed verdict which was affirmed by the Court of Appeals primarily on the basis that the accident and injury were due entirely to the negligence of the plaintiff. There was no debatable fact issue for the jury in the Johnson case."

If this was to clear up the confusion, it is significant to note that the Court held that the questions of the city's negligence in maintaining an uninsulated power line 27 feet above ground and of proximate cause were for the jury.

Although the Brown and Rogers cases, supra, involved uninsulated wires in business areas, we do not consider that fact is a distinction which would require a different application of the rule in the case at bar, particularly in view of Coatney v. Southwest Tennessee Electric Membership Corporation, supra.

In International Harvester Co. v. Sartain Western Section May 21, 1948, 32 Tenn.App. 425, at page 455, 222 S.W. 2d 854, at page 867, the Court quoted with approval from C.J. and C.J.S. as follows: "Location of Wires and Appliances. The duty of exercising due care extends to every place where persons have a right to be, whether for business, convenience or pleasure, and extends to those upon the premises of consumers, and it makes no difference that the injury occurred on private property, and not in a public highway, if the person or animal injured had a right to be on such private property. The mere fact that there may be no contractual relationship between the parties does not change this principle. * * *" 29 C.J.S. Electricity § 42.

Counsel for the defendant have cited Johnson v. Johnson City, supra, as being in conflict with the Brown case, supra. In the Rogers case, supra, the Supreme Court of Tennessee said of the Johnson City case that "The facts were entirely different" and that it turned on the question of contributory negligence.

Counsel for the appellant also cites an opinion of the Eastern Section of the Tennessee Court of Appeals. This case also turned on contributory negligence. "Assuming for the purposes of this appeal that the defendant was guilty of negligence in the maintenance of its wires, as alleged, we have concluded that the accident was due solely to the decedent's contributory negligence, and that no other inference could be reasonably drawn from the undisputed facts." City of Chattanooga, etc. v. Shackleford, 298 S.W.2d 743, at page 745.

Clearly, there was contributory negligence in these cases and they can be distinguished from the case at bar and the other Tennessee cases above cited.

■ The plaintiff was a 14 year old boy and whether or not he used due care for a boy of his age was certainly a question of fact.

We conclude the questions of negligence of the appellant, proximate cause and foreseeability under the evidence were questions of fact and the trial judge did not err in submitting the case to the jury.

Another claim of the appellant is that the trial judge should not have accepted the verdict as it was returned by the jury.

At 1:15 the jury returned and upon being asked if they had agreed on a verdict, Foreman Banner said: "Your Honor, rather than have a mistrial, we have agreed to give the boy $10,000.00, nothing for the father." This colloquy then followed between the Court, the foreman and the other jurors:

"The Court: Well, now, gentlemen, I don't understand what you mean by 'rather than have a mistrial'.

"Foreman Banner: Your Honor, I shouldn't have said that. Rather than deliberate longer.

"The Court: I can't accept a verdict of that kind. First, gentlemen, have you agreed upon your verdict?

"Foreman Banner: We have, sir. We have.

"The Court: All who say they have agreed upon their verdict, hold up your hands. (All jurors indicated in the affirmative.)

"The Court: What is your verdict?

"Foreman Banner: $10,000.00 for the child, the boy; nothing for the father. In other words, the boy will receive $10,000.00.

"Is that clear now?

"The Court: Is that your verdict, Mr. Banner?

"Foreman Banner: That is my verdict, sir. That is the agreed verdict for this jury."

The Court then polled each juror separately and each answered that the verdict was his verdict. The Court took further precaution as is indicated by the record (p. 752-a) to ascertain whether or not the jurors desired more time for deliberation and to make sure that the verdict reported was their verdict.

At the conclusion of the judge's charge (p. 732-a) he said "I am going to adjourn court at 1:00 o'clock. I am going to ask you to take the case and go to your room and start on your deliberations, and at one o'clock, I will then have you come back if you have not agreed. Don't rush about the matter; in other words, just use your judgment. I don't want you to think that because it is 25 minutes to adjourning time that you are required to rush. You are not. Just go to your room and work 25 minutes. If a verdict is not reached by that time, I will adjourn Court until Monday morning; if it is reached, very well."

The Court made it abundantly clear that the jurors need not rush; that they could come back on Monday, which they had to do any way, and deliberate further. The Court also took ample precaution to make certain that the verdict announced was the verdict of each and every member of the jury. Each one in-

sisted that it was his verdict and he did not want more time for deliberation.

 If a verdict is arrived at by compromise, by which some jurors surrender their conscientious convictions as to material issues or right of recovery in return for certain concessions by the other jurors on another issue, or issues, it is an invalid verdict and should be set aside. Simmons v. Fish, 210 Mass. 563, 570–571, 97 N.E. 102; Goodsell v. Seeley, 46 Mich. 623, 628, 10 N.W. 44; Bass v. Dehner, D.C.N.M., 21 F.Supp. 567, 568. On the other hand, most verdicts are the product of some give and take and such interchange of ideas as is necessary to arrive at a common understanding. A verdict reached through such open minded discussion between jurors with a proper regard for the opinions of others, is not invalid, provided the final result, after it is reached, is conscientiously approved by the jurors as a fair and just verdict. Bennett v. Baker, 1 Humph. 399, 400–401, 20 Tenn. 399, 400–401; Tinkle v. Dunivant, 16 Lea 503, 507–508, 84 Tenn. 503, 507–508. The evidence in this case does not convince us that the verdict was an invalid compromise under these principles. Although the remarks of the foreman indicated there had been some disagreement among the jurors which had been adjusted by a give and take method, the final result ultimately had the approval of each juror. Tinkle v. Dunivant, supra, 16 Lea 503, 507–508, 84 Tenn. 503, 507–508. Consolidated Ice-Mach. Co. v. Trenton Hygeian Ice Co., C.C.D.N.J., 57 F. 898; Simmons v. Fish, supra, 210 Mass. 563, 570–571, 97 N.E. 102. The presumption is always in favor of the validity of a verdict, if it is the result of an honest judgment. Brunswick-Balke-Collender Co. v. Foster Boat Co., 6 Cir., 141 F.2d 882, 885–886.

■ It is true that the District Judge instructed the jury that if the boy was entitled to a verdict, then the father would also be entitled to a verdict. But there was no evidence on behalf of the father to support his claim for damages and loss of services and the two verdicts are not necessarily inconsistent. The father has taken no appeal. It is the general rule in Tennessee that the party against whom a verdict for money damages is rendered in a tort action, may not complain that the verdict is a compromise verdict because the successful party should have recovered more. Illinois Central R. Co. v. Abernathey, 106 Tenn. 722, 64 S.W. 3. It is only in those cases where there is only one conclusion that the jury could reach as to the amount of damages, and it fails or refuses to do so, that the party against whom the verdict for money damages is rendered can successfully maintain that it is an invalid compromise verdict. High v. Lenow, 195 Tenn. 158, 168, 258 S.W.2d 742. The present case does not fall within that classification.

Finding no error in the record in respect to the complaints made by the appellant, the judgment is affirmed.