# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

**March 16, 2000**

**Cecil Crowson, Jr.
Appellate Court Clerk**

WANDA CARY SCOTT,           )
Administrator of the Estate of    )
Flois Cary Snoddy,                )
                                  )
    Plaintiff/Appellant,        )       Appeal No.
                                  )       M1999-00346-COA-R3-CV
VS.                               )
                                  )       Cheatham Circuit
ASHLAND HEALTHCARE               )       No. 4737
CENTER, INC., d/b/a OAKMONT       )
CARE CENTER; MONARCH             )
NURSING HOMES, INC., d/b/a        )
OAKMONT CARE CENTER;             )
RED BIRD JET CORPORATION,         )
d/b/a PARAGON HEALTHCARE          )
and/or PARAGON COMPANIES;        )
STEPHEN W. CREEKMORE and          )
MEDICAL HOLDINGS, LTD.,           )
                                  )
    Defendants/Appellees.       )

APPEALED FROM THE CIRCUIT COURT OF CHEATHAM COUNTY
AT ASHLAND CITY, TENNESSEE

THE HONORABLE ROBERT BURCH, JUDGE

STEVE R. DARNELL
P. O. Box 1008
Clarksville, Tennessee 37041-1008
    Attorney for Plaintiff/Appellant

ROBERT L. ESTES
PETER F. KLETT
424 Church Street, Suite 1401
Nashville, Tennessee 37219-2392
    Attorneys for Defendants/Appellees Ashland Healthcare Center, Inc.,
    Stephen W. Creekmore, Jr. and Medical Holdings, Ltd.

AFFIRMED AND REMANDED

BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

# **O P I N I O N**

In this wrongful death case against a nursing home, we are asked to decide if the holder of the certificate of need and the license to operate the facility may be held liable even if the facility is leased to and operated by another entity. The Circuit Court of Cheatham County granted summary judgment to the holder of the certificate of need and the license to operate. We affirm.

## **I.**

The administrator of the estate of Flois Cary Snoddy filed suit for his wrongful death alleging that he died on July 6, 1994 as a result of the treatment he received in the Oakmont Care Center in Ashland City. The complaint contained counts of common law negligence and the violation of certain state statutes and federal regulations. Among the defendants were Stephen Creekmore, Ashland Healthcare, Inc., and Medical Holdings, Ltd.

Stephen Creekmore owns Medical Holdings, Ltd., which, in turn, is the sole shareholder of Ashland Health Care, Inc., a corporation that built the Oakmont Care Center in Ashland City. Neither Creekmore, Ashland Healthcare, nor Medical Holdings are in the business of operating nursing homes.

In order to build a health care facility, the builder must first obtain a "Certificate of Need" (hereafter CON). Tenn. Code Ann. § 68-11-106. In 1988 Ashland Healthcare retained a private attorney to obtain the CON for the Ashland City facility. The application was inadvertently filed in the name of

-2-

Medical Holdings and issued in that name on November 21, 1988. The attorney discovered the mistake and the CON was reissued to Ashland Healthcare on September 22, 1993, as the construction neared completion.

A separate license is required to operate a health care facility. Tenn. Code Ann. § 68-11-204. Since Ashland Healthcare was not in the business of operating nursing homes, it leased the facility to Monarch Nursing Homes, Inc., an unrelated Missouri Corporation, on October 1, 1993.

Monarch applied for an operator's license on July 6, 1993, naming the institution Oakmont Care Center and showing Monarch Nursing Homes, Inc. as the owner of the business. The application was signed by John M. Pugh, a Monarch employee designated as the administrator of the facility. The licensing board rejected that application because the applicant was not the same as the holder of the CON. On September 28, 1993, another Monarch employee refiled the application in the name of Ashland Healthcare, Inc., D/B/A Oakmont Care Center. The application contained extensive accurate information about Ashland Healthcare, even showing the parent company as Medical Holdings, Ltd. There is a disputed question of fact, however, about whether Ashland Healthcare, Medical Holdings, and/or Mr. Creekmore knew about and acquiesced in the use of Ashland Healthcare's name to obtain the license. On October 1, 1993, the Department of Health issued a conditional six month license in the name of Ashland Healthcare, Inc., D/B/A Oakmont Care Center.

A new license, therefore, had to be obtained before the six month period expired. Despite the fact that the license could have been obtained by

Monarch by filing a change of ownership form, a new administrator of the Oakmont Care Center filed another application in the name of Ashland Healthcare, Inc., D/B/A Oakmont Care Center, on March 6, 1994. This application, however, contained the additional information that the facility was being operated by Monarch. The Department reissued the permit to Ashland Healthcare, Inc., D/B/A Oakmont Care Center, to expire on June 30, 1994.

On or about June 7, 1994, another application was filed in the name of Monarch Nursing Homes, Inc., D/B/A Oakmont Care Center. This application was also rejected because the name of the applicant was different from the prior licensee and no change of ownership form had been filed. On August 10, 1994, another Oakmont administrator, Duane Farnham, filed an application in the name of Ashland Healthcare, Inc., D/B/A Oakmont Care Center. The license was reissued in that name.

On August 12, 1994, Mr. Farnham filed another application for a license in the name of Monarch. The new license was issued to Monarch on August 16, 1994, even though the notification of a change of ownership was not filed until October or November. Mr. Snoddy, however, died on July 6, 1994, while the license was in the name of Ashland Healthcare.

Ashland Healthcare moved for summary judgment on the ground that they were never involved in the operation of the nursing home and shared no responsibility for Mr. Snoddy's death. The Circuit Court of Cheatham County granted the motion. Medical Holdings and Mr. Creekmore could be held

liable only through Ashland Healthcare.  Therefore, the court dismissed them also.

## II.

We think the undisputed facts show that Ashland Healthcare was not the operator of the Oakmont Care Center.  At all times the facility was under the control of and operated by Monarch.  Therefore the negligence that resulted in the harm to Mr. Snoddy was not the negligence of Ashland Healthcare nor of its employees.  Monarch was not Ashland Healthcare's agent; their relationship was that of landlord and tenant.

The plaintiff insists, however, that Ashland Healthcare can be held responsible for Mr. Snoddy's injuries on other theories.  We will discuss each theory in turn.

## A.

### THE NONTRANSFERABLE CON AND LICENSE TO OPERATE

The transfer of a CON will render it null and void. Tenn. Code Ann. § 66-11-120(a).  But the CON applies only to the construction of a facility, not to its operation.  By the time the facility is opened, the CON has served its purpose.  Therefore, the fact that Ashland Healthcare obtained the state's approval to construct the nursing home does not make it liable for acts that occurred when the facility was put into operation under other management.

A license to operate a health care facility cannot be transferred or assigned, either. Tenn. Rules & Regs. 1200-8-6-.01(2)(c) makes that policy explicit:

> Licenses are not transferable or assignable. Upon change of ownership the existing license is terminated and the new owner is required to submit an application with the licensing fee, be inspected and meet the applicable standards and regulations, or receive a waiver for the non-compliance from the Board, and approved for a license as is required for initial licensing. Any change of ownership shall be reported to the Department and a new application for licensure submitted at least thirty (30) days before the change is to be implemented.

Rule 1200-8-6-.01(2)(e)(1) defines an "owner":

> For the purpose of licensing, the "owner" of a health facility has the ultimate responsibility for the operation of the facility, including the final authority to make or control operational decisions and legal responsibility for the business management. A "change of ownership" occurs whenever this ultimate legal authority to control the activities and policies of the facility is transferred to another individual, group, or legal entity.

The regulatory scheme requires the license to be held by the person or entity that is operating the facility. But it does not purport to make the holder of the license liable for the acts of the "owner". In fact, the regulations make it clear that the change in responsibility for the operation is what triggers the requirement of a license change.

These statutes and regulations make it clear that neither a CON nor a license to operate a medical facility may be transferred without the concurrence of the health facilities commission (CON) or the board for licensing health care

facilities (the operator's license). They stop short, however, of imposing strict liability on the holder of either. The statutes and regulations provide the state with the authority to regulate the delivery of health care services and with the remedies to apply when the letter of the law has been violated, but they do not make a license holder vicariously liable for the acts of third parties.

## B.

### THE NON-DELEGABLE DUTY

The appellant asserts that Ashland Health Care had a duty of care to the Oakmont patients and that the duty could not be delegated to an independent contractor. This assertion is based on the rule that certain duties that are "intrinsically dangerous," cannot be delegated. *International Harvester Co. v. Sartain*, 222 S.W.2d 854 at 867 (Tenn. 1948). In *Sartain* the defendant undertook to supply electric power to an area of a construction site. Since "electricity, if not properly safeguarded, is one of the most dangerous and lethal agencies known to man," *Tennessee Electric Power Co. v. Sims*, 108 S.W.2d 801 (Tenn. Ct. App. 1937), the defendant could not delegate the duty to install the lines at a safe distance from structures on the site. Therefore, the defendant could be held liable for an independent contractor's negligence in the placement of the line.

In one case the court held that the duty of a "general acute-care hospital" to furnish non-negligent emergency room care could not be delegated to an independent contractor. *Jackson v. Power*, 743 P.2d 1376 (Alaska 1987). After reciting the instances where the courts had found duties to be non-

delegable, the Alaska Supreme Court concluded that the question came down to whether "the responsibility is so important to the community that the employer should not be permitted to transfer it to another." 743 P.2d at 1384.

We know of no authority saying that the operation of a nursing home falls into this category. Even if it does, however, the first question that has to be answered is whether the duty has been assumed by or imposed on the person or entity charged with violating the duty. As the Alaska Supreme court recognized, "a party cannot be held to have delegated away a duty it never had." 743 P.2d at 1382. As we have pointed out, neither the statutes nor the regulations impose on Ashland Healthcare the duty to operate the nursing home, and the uncontradicted proof in the record shows that Ashland Healthcare never undertook the operation of the Oakmont Care Center. The facility was constructed for the sole purpose of leasing it to someone else. Ashland Healthcare leased the building to Monarch in October of 1993 and Monarch at all times operated the facility. Therefore, we think the uncontradicted proof shows that Ashland Healthcare did not have a non-delegable duty to the public.

## C.

### ESTOPPEL

The plaintiff asserts that by allowing the operation of the nursing home under its license, Ashland Healthcare is now estopped to deny that it was the operator. Estoppel, however, requires reliance on the representation that is now denied. *Lawrence Co. v. White*, 288 S.W.2d 735 (Tenn. 1956). There is no proof that the plaintiff, or Mr. Snoddy himself, had any knowledge of the fact

-8-

that the license to operate Oakmont Health Center was in the name of Ashland Healthcare.  The plaintiff discovered that fact only after the lawsuit was filed.  Therefore, Ashland Healthcare is not estopped to deny that it ever operated the nursing home.

## III.

The judgment of the court below is affirmed and the cause is remanded to the Circuit Court of Cheatham County for any further proceedings necessary.  Tax the costs on appeal to the appellant, Wanda Cary Scott.

_____
BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:

_____
WILLIAM B. CAIN, JUDGE

_____
PATRICIA J. COTTRELL, JUDGE