## Case No. 4,943.

### FORREST v. HANSON.

[1 Cranch, C. C. 63.][1]

Circuit Court, District of Columbia. March Term, 1802.

Mr. Dennis, Mr. Gantt, and Mr. C. Lee, for plaintiff.

Mr. Simms and Mr. Jones, for defendant.

[1] [Reported by Hon. William Cranch, Chief Judge.]

Before KILTY, Chief Judge, and CRANCH and MARSHALL, Circuit Judges.

CRANCH, Circuit Judge. In this case, it is not necessary to consider whether the words would be actionable in themselves, if not spoken of a person who exercises an office of trust, because the plaintiff has grounded his action upon the speaking of the words respecting him in his official character as a director of the bank, and the words are alleged to be spoken of his official conduct. The question then is, whether these words, spoken of the official conduct of a person who holds an office of trust, are actionable? There is no doubt that words not actionable when spoken of a common person, may become actionable when spoken of an officer, and in relation to his official conduct. The general rule is laid down in 4 Bac. Abr. 489. thus: "As all words spoken of any person who is in the enjoyment of an office of honor, profit, or trust, which import a charge of unfitness to discharge the duties

of the same, must be prejudicial to such person; these have, and with good reason, been always held to be in themselves actionable; but wherever words, in themselves not actionable, become so by being spoken of a person in office, it must appear from the words themselves, or from the pleadings, that they were spoken in a colloquium concerning his office; for the very foundation of the action is its being a disgrace in office." If this is law, (and the whole course of authorities proves it to be so)—if the office of director of the Bank of Columbia is an office of trust; if the plaintiff was a director at the time of the speaking of the words; if the words import an unfitness to discharge the duties of that office; and if it appears, from the words themselves, or from the pleadings, that they were spoken in a colloquium concerning that office, then it follows as an irresistible consequence, that the words thus spoken are actionable, and judgment must be rendered for the plaintiff. This is the result of a comprehensive view of all the cases decided on the subject.

The next question is, whether the office of director of the Bank of Columbia is such an office of trust as is contemplated by the law? That it is an office of trust seems to be proved by the words of the act incorporating the bank. By that act the directors are intrusted with the power of "regulating the affairs of the bank—of choosing a president and a cashier—of determining upon the manner of doing business, and the rules and forms to be pursued—of appointing and paying the various officers they may find necessary, and finally of disposing of the money and credit of the bank in the common course of banking, for the interest and benefit of the proprietors," &c., and by the 12th section any director who shall commit any fraud touching the money or property of the bank is liable to be prosecuted by indictment. It appears, then, that the office of director is an office of high trust and responsibility. The cases in the books speak not only of words being actionable by reason of their being spoken of judges and the higher judicial officers and justices of the peace, but also of sheriffs, stewards of courts-leet, church-wardens (Style, 338; Woodruff v. Weoley, Cart. 1); town clerk (Godb. 157, pl. 211; Yel. 142); a constable (Yel. 153); a deputy-clerk to an arch-deacon's register (Reignald's Case, Cro. Car. 563); and even a clerk to the Company of Merchant Tailors (Cro. Eliz. 358); and the steward of a private gentleman (Seaman v. Bigg, 3 Cro. Car. 480). Surely some of these offices are not more respectable, or of higher trust or responsibility than that of a director of a bank. In Sir Richard Greenfield's Case, March, 82, pl. 135, it is said, "that it is not material what employment he hath under the king, if he may lose his employment or trust thereby." In the case of Woodruff v. Weoley, Cart. 1, the action

was for words spoken of a church-warden. A colloquium was laid of the office. Bridgman, C. J., said, "that to say he hath cheated me, are words of passion; but if applied to a man in his office, the action will lie; and so it must be adjudged." In the case of Wright v. Moorhouse, Cro. Eliz. 358, words spoken of the clerk of the Merchant Tailors were held actionable on account of the office. In the case of Strode v. Homes, Style, 338, words spoken of a church-warden were also held to be actionable on account of the office; and Rolle, C. J., said, "Officers which have no benefit by their offices have more need to be repaired, if they be scandalized in their execution of them; and here the scandal is a great loss to an honest man; and what other remedy can he have to repair himself, but by this action on the case?" The office of a director of a bank is clearly within the reason of the cases; and therefore is within the law.

The next question is, do the words import an unfitness to discharge the duties of the office? Upon this point, I presume there can be no difference of sentiment. No man will say that a liar and a swindler is a fit person to be intrusted with the office of a director of a bank. In 1 Term R. 753, it is said to be formerly held that the word "swindling" was in general use, and that the court could not say they were ignorant of it. In the same case, Ashhurst, J., held it to imply crimes for which the person might be indicted; and Buller, J., said it contained as libellous a charge as can well be imagined. In Berryman v. Wise, 4 Term R. 366, there was no question but the word was actionable when applied to an attorney in his official character; and in the argument of the present case, it seemed to be agreed that it was a word which had come into use since the statute of 30 Geo. II. c. 24, and was generally understood to imply a charge of the crimes, or some of them, mentioned in that statute. One of the principal offences mentioned in that statute, and the one to which the term "swindling" seems to be most appropriately applied, is that of "knowingly and designedly, by false pretences, obtaining from any person money, goods, &c. with intent to cheat or defraud any person of the same." This offence is substantially and accurately the common law offence of cheating, which is described in 1 Hawk. P. C. 343, to be "deceitful practices, in defrauding, or endeavoring to defraud another of his known right, by means of some artful device, contrary to the plain rules of common honesty." To charge a man with swindling, seems, therefore, to be substantially to charge him with an offence for which he may be liable to a prosecution at common law. I have before observed that it is not necessary in this case to decide whether the words were actionable in themselves, in the strict signification of the phrase, but I can have no doubt of their

being actionable when applied to a man either in his professional or official character. No man in the least acquainted with the world, particularly with the commercial part of it, can say that he does not know the meaning of the word. Everybody knows that it implies a high degree of moral depravity, and that its essence is fraud. No one will say that it is not totally incompatible with that strict integrity of character which ought to be the first qualification of a director of a bank, and no one will say that it does not destroy all idea of fitness for the high trust of that office.

The last question on this point is, whether it appears from the words themselves, or from the pleadings, that they were spoken in a colloquium concerning that office? To decide this question, it is only necessary to read the declaration. It states that the plaintiff was a director of the Bank of Columbia, and as such had well demeaned himself, &c., yet the defendant knowing, &c. but intending, &c. and to have the plaintiff turned out as a director, and to prevent him from having and obtaining credit at the bank, on the 1st of June, 1801, in certain discourse had concerning the plaintiff, as one of the directors of the said bank, spoke the following words: "General Forrest is a liar and a swindler, and I can prove him to be so; I, as cashier, say so of one of the directors, and I think one or the other of us ought to be turned out of the bank." From this it appears that there is not only an express colloquium laid of him as director, but it also appears clearly from the words themselves, that they were spoken of him in his official character. The fact, that the plaintiff was a director of the Bank of Columbia, is admitted by the pleadings and verdict. Upon the question whether the plaintiff shall recover his full costs, I have no doubt. The statute of Glocester is the foundation of costs in Maryland. It seems to have been in force from the first settlement of the country, and gives costs in all cases where damages are recovered. The statute of 21 Jac. c. 16, does not appear to have been at any time practised upon in Maryland; and there seems to be good reason why it has not. It was not applicable to the circumstances of this country. The intention of that statute was to prevent trifling actions of slander from being brought in the superior courts in England. It was never construed to extend to those courts whose jurisdiction was limited to actions of forty shillings value. 6 Vin. Abr. 530; Ld. Raym. 181, 182. Consequently the statute was of a local nature, and only applicable to the peculiar relative situation of the courts in England, and even there, if the action was carried up to the courts at Westminster Hall by habeas corpus or certiorari, and damages assessed under forty shillings, yet the plaintiff had his full costs. 6 Vin. Abr. 356; Ld. Raym. 395; 1 Bac. Abr. 514; 7

Mod. 129; 4 Mod. 378. The question made at the bar, whether that statute passed before or after the first emigration of inhabitants to Maryland, seems to me of little importance as to the present point. For if it passed prior to that date, still it is not law by virtue of the declaration of rights in Maryland, unless it had by experience been found applicable to their circumstances, before the year 1776. This experience could only be by practising upon it in courts of law. And if it was passed after the date of the first emigration to Maryland, it would still have no force here, unless it had been practised upon by courts of law or equity prior to the same year. So that it is not necessary to ascertain the precise time of the first emigration to Maryland. No case having been produced in which the statute of James has been practised upon in Maryland, we cannot consider it as in force here; and if it is not, there is nothing to prevent the full operation of the statute of Glocester, which gives costs in all cases where damages are recovered. The jurisdiction of this court is unlimited by the amount of the claim, or of the verdict, in actions of slander; for although the court has decided that the justices of the peace have exclusive original jurisdiction in all cases where they have cognizance, yet the justices have no cognizance of actions of slander. For these reasons, I am clearly of opinion, that the plaintiff ought to have his judgment, with full costs.