Bettie Jean MOZIE, Appellant,

v.

SEARS ROEBUCK AND COMPANY, Appellee.

No. 91–CV–1132.

District of Columbia Court of Appeals.

Argued Feb. 9, 1993.
Decided April 20, 1993.

John F.X. Costello, Landover, MD, for appellant.

Thomas B. Morrison, Rockville, MD, for appellee.

Before ROGERS, Chief Judge, and FERREN and FARRELL, Associate Judges.

ROGERS, Chief Judge:

This is a case in which a successful plaintiff has appealed the verdict as too low because of instructional error and jury compromise and she also challenges an allegedly erroneous credit awarded to the defendant, Sears Roebuck and Company. Appellant, Bettie Jean Mozie, appeals from a judgment in her favor in the amount of $37,500 following a jury trial in connection with a car accident, and the denial of her motion for a new trial. She contends that the trial judge erred in (1) refusing to instruct the jury on the malpractice standard of care of a professional and on the collateral source doctrine, (2) granting a challenge to a juror where the reason for the strike was racial, (3) denying her motion for a directed verdict on liability, (4) allowing a credit against the judgment to appellee Sears Roebuck and Company for sums paid in another lawsuit by a settling non-party, and (5) denying a motion for a new trial on the ground that the verdict was the result of a compromise constituting jury misconduct. Only the fourth and fifth contentions need be discussed in any length. Upon examining appellant's compromise verdict contention, we find no error by the trial judge in denying the motion for a new trial. We agree, however, that the trial judge erred in allowing a credit against the judgment, contrary to the language of the release entered into by appellant and the settling non-party. Accordingly, we affirm the judgment in appellant's favor and we reverse the denial of the motion for a new trial to the extent that Sears was allowed a credit against the judgment.

## I.

On May 4, 1985, appellant was a passenger in a car driven by her friend Janice Bryant, an elementary school counselor in the D.C. public schools, when the power brakes on Ms. Bryant's 1977 Monte Carlo failed—"the brake pedal went all the way to the floor." The car went down a hill and

part way up another one when it jumped the curb and hit a lightpole. Appellant sued appellee Sears Roebuck and Company for negligence and breach of warranty and sought $75,000 damages for "substantial and permanent injuries, ongoing pain and lost wages."[1]

At the trial Ms. Bryant testified that Sears Roebuck and Company serviced her car four or five times between March 18, 1985, and the day of the accident. On the morning of the accident Ms. Bryant went to Sears to buy a car radio, and while there she informed the service advisor that the brakes were still making a noise; she was told that there was nothing wrong with the brakes. Ms. Bryant testified that had Sears warned her not to drive the car or advised her to get a second opinion, she would not have driven the car.

Appellant, an educational aide for grades four through six in the D.C. public schools, described her daily discomfort as a result of the May 4, 1985 car accident, including pain nearly every day of the week, her depression, her efforts to return to work, her two hospitalizations and her physical therapy that had continued until the end of June 1991. She claimed that prior to 1985 she had been a physically active person, but that since January 1987 she had to wear the back brace most of the time. Appellant introduced evidence that she had lost wages of approximately $16,000 and incurred medical expenses in excess of approximately $16,000.[2]

Appellant also offered medical evidence that as a result of the accident she had suffered injuries to her neck, wrist, left knee and lower back and had to remain off work for over a year. Dr. Rida Azer, an orthopedic surgeon, testified that as a result of the May 4, 1985, accident appellant had suffered a permanent injury, namely a herniated or slipped disc in the lower back, the lumbar spine, which, after testing and consultation with other physicians, indicated that surgery, involving "a very big operation," would be required in an attempt to relieve the pain.[3] Although the injuries to appellant's wrist and knees improved, she continued to have severe pain in her back. The doctor testified that without surgery appellant would continue to suffer future pain in her lower back and also sciatic pain for the rest of her life.[4] The doctor's records also described an injury suffered by appellant in a 1981 automobile accident, from which Dr. Azer testified appellant had completely recovered by February 1982; she had not suffered a herniated disc at that time. On cross-examination, the doctor admitted also seeing appellant in connection with a third incident, in October 1989, when appellant had struck her tail bone on a chair while at work and suffered pain in her left hip, tail bone and the same area of her lower back that she had injured in 1985. The doctor also opined that, in view of appellant's injuries, thirteen and one half months was a reasonable time for her to be out of work since she was a teacher who had to deal with children.

In addition, appellant offered the testimony of Bruce D. Wakefield, an expert in the field of automotive mechanics and on the standard of care for mechanics regard-

---

1. As a result of the accident, Ms. Bryant sued Sears in Montgomery County, Maryland, on December 16, 1987, which suit was still pending. Appellant filed suits in Montgomery County against Ms. Bryant and Sears on May 4, 1988. The instant case was filed on May 3, 1988.

2. Appellant testified that as of May 4, 1985, she was paid by the hour. She also stated that she was not seeking recovery of lost wages since her fall in 1989 after she had tried to lift a chair while at work.

3. The operation, which the doctor testified appellant continued to need, involved removal of the disc, freeing the nerve, and if there was instability in the spine, spinal fusion or bone graft. The operation would cost between $31,-

000 and $36,000. By stipulation, the parties subsequently agreed that the surgery would cost between $6,500 and $10,000. Dr. Azer advised appellant, however, that there were serious risks involved, and that success was not certain. Although appellant entered the hospital and was put in traction, she did not undergo the operation.

4. The doctor prescribed medications, "nerve blocks" to provide temporary relief from the pain, and a corset to make appellant more comfortable. However, the doctor remained concerned about more nerve damage occurring to appellant's back.

ing brakes. He testified that the standard of care required a repair mechanic to take the customer's complaints about brakes seriously, conduct a complete inspection, if not several, including a road test, to find the problem, and if unable to identify and allay the problem, to advise the customer not to use the automobile on the street until a remedy or solution could be found. He opined that the minimum standards had not been met in this case, that Sears was negligent, that the noise heard by appellant was related to the failure of the master cylinder and that this failure had caused the brakes to fail on May 4, 1985.[5]

The defense called Terry Franklin, Jr., as an expert witness in automotive repair of brakes and Sears' representative. He described the standard procedure for checking brakes that a Sears mechanic is taught, which includes checking the master cylinder for fluids. He had personally examined Ms. Bryant's car on April 9, 1985, and testified that he would have used these standard procedures. He claimed that in twenty-one years of working on brakes he had never had a master cylinder failure that was indicated by noise; during that time he had never seen one make noise before.[6] He explained that when the brake pedal is all the way down to the floor you would hear a noise, but that it would be more associated with pedal failure and that with power brakes and a failing master cylinder system pumping the pedal would create more resistance.[7]

A second defense expert, Clyde C. Richard, an expert in mechanical engineering and the sub-specialty of brake systems, testified that a master cylinder which was not functioning would not cause noise in the absence of other symptoms: "[t]here's no noise associated with this system." Thus, if a person consistently pushes down on the brakes and there is a knocking noise, it would not, in his opinion, indicate a possible problem with the master cylinder. In response to a hypothetical question, he testified that replacing the master cylinder would change the pressure put on the brake system at the wheels, but that replacement would not have anything to do with the master cylinder making noise.

The judge denied the defense motion to dismiss and the plaintiff's motion for a directed verdict on liability, based on the agreement of the plaintiff's expert and the defense expert (Mr. Franklin) on the standard of care. The jury returned a verdict for $37,500.00 in appellant's favor. The judge denied appellant's motion for a new trial.

## II.

■ Appellant contends that there were several problems with the jury instructions.[8] After the trial judge had given the general instructions to the jury, appellant's counsel identified additional instructions addressing the standard of care in malpractice cases that he requested the judge to

---

5. On cross-examination Mr. Wakefield conceded that he did not know what was causing the knocking noise about which appellant had complained to Sears. But he maintained that the noise was associated with the brake application and had Sears done a proper inspection it would have located the problem.

6. As part of her case, appellant read portions of a January 16, 1990, deposition of Terry Franklin, in which he had stated that noise associated with the brakes could involve a problem with the master cylinder. He also conceded that, according to the service tickets for work on Ms. Bryant's car, she had not been warned of a problem with her brakes. He further stated that he would have checked the hydraulic system, although he did not know if he would have taken the master cylinder apart. He also would

have advised the customer to get a second opinion when she continued to complain about the noise. Had he suspected a problem with the master cylinder, he testified that he would have told the customer not to drive the car.

7. He admitted that he had no independent recollection at the time of trial, six years later, whether he had heard any noise. In his deposition taken almost five years after the accident, he had stated that he had not heard any noise.

8. We address appellant's claims of instructional error, even though the jury returned a verdict in her favor, because she maintains that the instructional error affected the measure of damages. Cf. *Cooper v. Berzin,* 621 A.2d 395 (D.C. 1993).

give to the jury.[9] The judge refused. Subsequently, during deliberations, the jury asked several questions relating to liability,[10] and the judge stated that he would reinstruct the jury on negligence. A second note inquired about insurance, and it, as well as a third note, inquired about appellant's medical bills.

It has long been clear that the trial court has a duty to answer jurors' questions. *Turner v. Foxhall*, 2 Cranch C.C. 324, 2 D.C. 324 (1822); *Forrest v. Hanson*, 1 Cranch C.C. 63, 1 D.C. 63 (1802); see *Dickins v. Int'l Bhd. of Teamsters*, 84 U.S.App.D.C. 51, 171 F.2d 21 (1948). Likewise, "[w]here a jury 'makes known its difficulty and requests further instructions on the law applicable to an important issue, the trial judge is required to give such supplemental instructions as may be necessary to guide it in the determination of the issue....'" *Swift v. R.H. Macy's & Co.*, 780 F.2d 1358, 1361 (8th Cir.1985) (quoting *Walsh v. Miehl–Goss–Dexter, Inc.*, 378 F.2d 409, 415 (3rd Cir.1967)). Of course, the court may decline to give such instructions where they would confuse the jury. *Munsey v. Safeway Stores*, 65 A.2d 598, 602 (D.C.1949). It is also clear that "[t]he elements of an action for professional negligence are the same as those of an ordinary negligence action." *O'Neil v. Bergan*, 452 A.2d 337, 341 (D.C.1982). In determining whether error occurred, the court must determine whether or not the instructions given, although in more general terms, fully informed the jury on the law. See *Mark Keshishian & Sons, Inc. v. Washington Square, Inc.*, 414 A.2d 834, 841 (D.C.1980).

As in *Sinai v. Polinger Co.*, 498 A.2d 520 (D.C.1985), the trial judge in the instant case provided the jury with general instructions on the standard of care, namely reasonable care under the circumstances. The judge also specifically instructed that "a garage keeper [who] undertakes to repair an automobile ... has the duty to do the work required with ordinary skill and judgment. This duty includes the duty to warn a customer of dangerous conditions which, in the exercise of ordinary care, the garage keeper or mechanic should be aware of," and that the person inspecting or repairing the car has a duty to inform appellant of "any defects that he observes or should have observed upon reasonable inspection. That is, a mechanic, upon inspecting a motor vehicle, has a duty to warn the customer of any damages which a reasonable inspection would have detected." While the judge might well have provided a more direct answer to the jury's question about the standard of care and the use of expert testimony, the judge was not required to give the particular instructions requested by appellant so long as the instructions to the jury, "considered as a whole, fairly and accurately state[d] the applicable law." *Psychiatric Institute of Washington v. Allen*, 509 A.2d 619, 625 (D.C.1986).

To the extent that appellant's argument focuses on the amount of care that Sears was required to take, through its trained mechanics, in addressing Ms. Bryant's complaints rather than the standard of reasonable care under the circumstances, we conclude, as in *Sinai v. Polinger Co., supra*, 498 A.2d at 529, where a similar argument was made, that the trial judge's instruc-

---

9. The instructions identified by appellant's counsel were the non-revised versions of the standard jury instructions No. 9–1 (General Standard of Care), No. 9–2 (Medical Malpractice—Nature of the Claim), No. 9–3 (Doctor's Standard of Care (Non–Specialist)), and No. 9–5 (Standard of Care Determined by Expert Testimony). See STANDARDIZED CIVIL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA (1981).

10. The jury note stated:
1. Is there a stated set of requirements under law for the minimum standard of care? Under D.C. law? car care industry

2. Document # 21—is this expert opinion or law? (#'s 1, 2, 3)
3. May we see judge's instructions/definitions related to negligence?
Appellant states in her brief that exhibit 21 was Mr. Wakefield's written notes on what constituted the standard of care, and stated: "1. Take the customer's concerns and complaints seriously; 2. Perform a complete inspection to find the problem; 3. If one cannot identify the problem, one should warn the customer not to use the vehicle."

tions did not mislead the jury or misinform them of the relevant law to be applied. *Id.* at 530. While "the duty of reasonable care requires that those with special training and experience adhere to a standard of conduct commensurate with such attributes," *Morrison v. MacNamara,* 407 A.2d 555, 560 (D.C.1979), the judge's instructions addressed the special responsibilities of a trained auto mechanic. *See Psychiatric Institute of Washington v. Allen, supra,* 509 A.2d at 625–26. The judge could reasonably conclude that to inject a modified medical malpractice instruction in response to the jury's note would have caused unnecessary confusion. *Munsey v. Safeway Stores, supra,* 65 A.2d at 601–02. The judge's instruction on the mechanic's duty made clear that the jury was not to apply simply a layperson standard, but rather should weigh Sears' mechanic's expertise as one of the circumstances relevant to the exercise of reasonable care. *See Sinai v. Polinger Co., supra,* 498 A.2d at 530. Appellant's reliance on *Washington Metro. Area Transit Auth. v. Ward,* 433 A.2d 1072 (D.C.1981), is misplaced since that case involved an erroneous instruction to the jury, thereby requiring a new trial.

▮▮▮ Finally, appellant's claim of error based on the contention that the standard of care is to be determined solely by expert testimony is ultimately unpersuasive.[11] In the general instructions to the jury, the trial judge instructed that the jury was "not bound by [the expert opinion] if the facts upon which the opinion is based have not been established to your satisfaction by the evidence. However, you should not reject it if it is uncontradicted and not inherently unreasonable." These instructions, which counsel for appellant had indicated were satisfactory, left it to the jury to decide which expert to believe. Appellant's requested instruction would have told the jury that "You must determine the standard of professional learning, skill and care required of the defendant only from the opinions of the [experts.]" STANDARDIZED CIVIL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 9–5 (Supp.1981). Since the instant case required expert testimony for resolution of the question of liability, the requested instruction would have made explicit what was implicit in the instructions that the jury was given. In view of the evidence before the jury, however, the judge's instructions, in effect, told the jury the same thing. The jury's attention was necessarily focused on the expert testimony in determining whether Sears had violated the standard of care since that was the only standard-of-care evidence before it. The experts disagreed about whether or not a non-negligent mechanic would have known that a knocking noise indicated a master cylinder problem, and the jury had to decide which expert to believe. In any event, because the jury found Sears liable, the jury necessarily found that the standard of care had been breached, and thus any error was harmless.[12]

### III.

Appellant also contends that the trial judge erred in denying her motion for a new trial because the verdict was a result of a jury compromise that constituted misconduct. This argument is unpersuasive. Appellant maintains, in effect, that an impermissible compromise occurred in that the jurors were unable to agree on liability and compromised their disagreement by entering a low award of damages. She relies

**11.** Appellant relies on *Meek v. Shepard,* 484 A.2d 579, 581 n. 4 (D.C.1984) ("[t]he standard of care in medical malpractice cases must ordinarily be proven by expert testimony. Only when a layperson, relying on common knowledge and experience, can find that the harm would not have occurred in the absence of negligence may the standard be established without the aid of an expert") (citations omitted), and *Morrison v. MacNamara, supra,* 407 A.2d at 560 (look to special knowledge or skills of actor in establishing standard of care).

**12.** Finally, appellant's contention that the trial judge erred by not instructing the jury, in response to its questions, on the collateral source doctrine is meritless. *See Mark Keshishian & Sons, Inc., v. Washington Square, Inc., supra,* 414 A.2d at 841; *Thomas v. United States,* 74 App. D.C. 167, 172–173, 121 F.2d 905, 910–11 (1941). The judge's instruction clearly answered the jury's questions about insurance and who decided which medical bills were to be covered in the damages award.

on the fact that the jury awarded only approximately $5,000 above the special damages (medical costs and loss of wages) identified by appellant. She also relies on an affidavit of a juror.[13]

■■■■ Under Super.Ct.Civ.R. 59, the trial court has broad discretion to grant a new trial. *See, e.g., Queen v. D.C. Transit Sys., Inc.*, 364 A.2d 145, 148 (D.C.1976). The Supreme Court has observed, that "jurors ... [are] summoned to perform a duty in the administration of justice, and ..., for the time being, [are] officers of the court," and that "the conduct of the jurors and officers of the court, may be of such a character as not only to defeat the rights of litigants, but it may directly affect the administration of public justice." *McDonald and United States Fidelity and Guaranty Co. v. Pless*, 238 U.S. 264, 266, 35 S.Ct. 783, 784, 59 L.Ed. 1300 (1915). The jurors are to reach their unanimous verdict "acting fairly and impartially in accordance with the trial court's instructions" on the basis of the evidence properly before the jury. *See* 6A JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 59.08[4] (1993). A compromise verdict based, for example, on passion, prejudice, partiality or mistake is unacceptable. *See Elvin v. Public Serv. Coordinated Transp.*, 4 N.J.Super. 491, 67 A.2d 889, 890 (Ct.App.Div.1949) (citations omitted). No less acceptable is a reduced damages award reached by a compromise on liability in the absence of unanimity. *See Schore v. Mueller*, 290 Minn. 186, 186 N.W.2d 699, 702 (1971); *National R.R. Passenger Corp. v. Koch Indus., Inc.*, 701 F.2d 108, 110 (10th Cir.1983) (citing decisions from the Fourth and Fifth Circuits Courts of Appeal and 11 C. WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2814, at 96 (1973)); *Kingsport Utilities, Inc. v. Lamson*, 257 F.2d 553, 559 (6th Circuit 1958). *See generally* ROBERT S. HUNTER, FEDERAL TRIAL HANDBOOK 2D. § 88.19 (1984) (compromise verdicts).

In support of her claim of jury compromise, appellant cites *Schore v. Mueller*, *supra*, 186 N.W.2d at 702, which has some similarities to the instant case. In that case the court stated that "where the award is less, or only slightly more, than proved special damages, a strong inference of compromise arises." The Minnesota Supreme Court decided that a $10,000 verdict, which was lower than the special damages in excess of $15,000, indicated that the verdict was either excessive or inadequate depending on whether the jury found that the aggravation to a preexisting injury was temporary or contributed to the duration and consequences, including surgery (laminectomy and spinal fusion), permanent disability and substantial special and general damages. *Id.* at 701. Although the plaintiff had a long history of back trouble, he testified that he was free of all symptoms for almost two years before the automobile accident. *Id.* The defendant also claimed the slight impact of the collision had caused only temporary aggravation lasting no more than four months. *Id.* The court noted the relative absence of difficulty in separating plaintiff's claims properly attributable to the defendant's negligence and those which would normally have resulted from the plaintiff's preexisting back condition had there been no aggravation. *Id.* It concluded that the verdict was a compromise, focusing on the fact that "the critical issue is the causal relation between defendant's negligence and the several items of special and general damages claimed." *Id.*, 186 N.W.2d at 702 (citation omitted).

■■■■ Even so, a small award in relation to specials is not the end of the matter. *Cf. National R.R. Passenger Corp. v. Koch Indus., Inc.*, *supra*, 701 F.2d at 110 ("[w]hile a grossly inadequate award of damages by itself does not require retrying the liability issue, suspicion should be aroused if the jury awards only nominal damages, disregards uncontested and obvious damages, or awards a party only its out-of-pocket losses") (citations omitted).

---

**13.** In the affidavit the juror stated that there was a compromise among the jurors because one juror was not sure that Sears was negligent. The juror also stated that if the judge had instructed the jury that the standard of care was to be determined by the experts' opinions, "it is my opinion that we would have awarded more damages."

For example, the Eleventh Circuit Court of Appeals, in concluding that insufficient damages was not enough to show a compromise verdict, relied on four other factors to determine whether there had been a compromise verdict: the jury took four days to reach a verdict, liability was strongly contested, the jury attempted to qualify its verdict and the court gave an *Allen* [14] charge. *Mekdeci v. Merrell Nat'l Labs,* 711 F.2d 1510, 1514–15 (11th Cir. 1983). When these factors were added to the insufficient damages, the court concluded that the trial court had not abused its discretion in ordering a new trial because of a compromise verdict. *See also National R.R. Passenger Corp. v. Koch Indus., Inc., supra,* 701 F.2d at 110 (court looks to close question of liability, grossly inadequate damages, and other circumstances such as the length of jury deliberations); *Hatfield v. Seaboard Air Line R.R. Co.,* 396 F.2d 721, 723 (5th Cir.1968) (four factors).

█ The instant case involves neither a nominal award of damages nor circumstances like those in *Mekdeci v. Merrell Nat'l Labs, supra,* 711 F.2d 1510. The award was approximately fifteen percent higher than the proved special damages, and while not substantially in excess, the overage is also not slight. Here, also, the trial judge denied appellant's motion for a new trial. The jury's verdict was returned after only a short period of deliberations (approximately five hours), and the court did not give an *Allen* charge. Nor did the jury qualify its verdict. Thus, the only one of the four elements considered by the Eleventh Circuit Court of Appeals that exists here is strongly contested liability; not only did Sears offer two experts regarding whether noise would indicate a master cylinder problem to a non-negligent mechanic, but during closing argument counsel for Sears attacked the credibility of Ms. Bryant.

There is a fine line between a compromised verdict and the normal "give and take and such interchange of ideas as is necessary to arrive at a common under-

standing." *Kingsport Util. Inc. v. Lamson,* 257 F.2d 553, 559 (6th Cir.1958). In that case, the foreman had said when returning the verdict "Your Honor, rather than have a mistrial, we have agreed to give the boy $10,000.00, nothing for the father." *Id.* at 558. The trial court immediately took precautions to insure that the verdict was not compromised—the jury was polled and each juror agreed to the verdict. Concluding that there had not been a compromise verdict, the court observed that there was a presumption in favor of a valid verdict. *Id.* at 559. Although the trial judge in the instant case did not poll the jury, there was no qualification by the jury of its verdict and we are persuaded that the size of the verdict can be explained by a number of circumstances.

Sears brought out, on cross-examination of appellant's medical expert, that appellant had suffered an injury to her back in 1989. In addition, the 1985 accident was a low impact collision, causing less than $400 in damages that did not affect Ms. Bryant's ability to continue to drive her car. Appellant testified she continued to suffer great pain, but was nonetheless able to work as an education aide. This could have caused the jury to conclude that her claim for 13 months lost wages was excessive. Combined with the evidence of appellant's 1981 accident, the jury could reasonably have concluded that appellant's pain and suffering as a result of the 1985 accident were not as great as she claimed.

Therefore, since the court has held that a juror's affidavit cannot be used as evidence to support a compromise verdict, *Sellers v. United States,* 401 A.2d 974, 981–82 (D.C. 1979) (citations omitted); *see McDonald v. Pless, supra,* 238 U.S. 264, 35 S.Ct. 783, appellant has not presented the evidence necessary to show a compromised verdict. *See Mekdeci v. Merrell Nat'l Labs, supra,* 711 F.2d at 1514 (citing *Lucas v. Am. Mfg. Co.,* 630 F.2d 291, 293–94 (5th Cir.1980), and *Hatfield v. Seaboard Air Line R.R. Co., supra,* 396 F.2d at 723). Hence, the trial judge did not abuse his discretion in denying appellant's motion for a new trial.

---

**14.** *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

*See Queen v. D.C. Transit Sys., Inc., supra,* 364 A.2d at 148 (award turned on credibility of testimony as to damages).

## IV.

Finally, appellant contends that the judge erred in ruling that Sears was entitled to a credit against the judgment pursuant to the release agreement between appellant and Ms. Bryant.

In addition to the instant lawsuit, appellant also filed suit against Sears and Ms. Bryant in Maryland. *See* note 1, *supra.* Following a trial in Maryland in August 1990, the jury had sent a note to the judge advising that it could not decide the cases, but after receiving an *Allen* charge, the jury sent a note that they had reached a verdict on one claim. When the jury returned to the courtroom, however, the judge indicated to counsel that there had been an amendment relating to the amount of damages and asked the jury to return to the jury room to continue deliberations on damages after noting its partial verdict against Ms. Bryant and in favor of Ms. Mozie.[15] Following a recess, counsel for Ms. Mozie advised the judge that Ms. Mozie had entered into a settlement agreement with Ms. Bryant for $80,000.00, based on the nonadmission of liability by Ms. Bryant.[16] The release agreement provided that "if it should be proven at any subsequent trial that JANICE BRYANT was in fact a joint tortfeasor in the accident of May 4, 1985," then Sears would be entitled to contribution in the amount of a *pro rata* share against any judgment in appellant's favor.[17] The release also stated that its terms would be governed by Maryland law. Counsel for appellant further advised the Maryland judge that the pending case would be dismissed and no judgment would be entered.[18] The judge then declared a mistrial as to the other claims, stating expressly that "[w]e did not previously take the [partial] verdict although the jury had indicated that they had reached a verdict on the question of the liability as between Plaintiff Mozie and Plaintiff Bryant."

Sears initially moved to impose a credit of $80,000 on any judgment received by appellant in the instant case, applying District of Columbia law on joint tortfeasors. Appellant countered that Maryland law should control and that under Maryland law Sears was not entitled to the credit. The trial judge ruled that a credit would not be imposed. However, Sears moved for reconsideration, arguing that even under Maryland law the credit should be awarded, and the judge granted the motion, ruling in Sears' favor for the reasons stated in its motion for reconsideration. On appeal, the parties agree that Maryland law applies, but they differ as to the result to be reached. We agree that Maryland law controls. *See Lamphier v. Washington Hosp. Ctr.,* 524 A.2d 729, 731 (D.C.1987) (the District of Columbia em-

---

15. The verdict was not enrolled at that time. Nor did the judge poll the jury on its liability verdict. The judge observed that it was obvious that the jury had not reached a complete verdict on the claim, and perhaps they would be unable to. Counsel for Ms. Mozie then advised the judge that she was prepared to settle her claim against Ms. Bryant for the limits of her policy assuming they were $100,000.00 and "take a joint tortfeasor release under the Swaggered case," *see Swigert v. Welk,* 213 Md. 613, 133 A.2d 428 (1957), where the liability of Ms. Bryant is denied.

16. Counsel for Ms. Mozie stated that the release "is a swaggered release in which Mrs. Bryant does not admit liability, but expressly denies it." Counsel for Ms. Mozie explained that Ms. Bryant's insurer wanted to be sure to preserve her rights in her suit against Sears, and hence she was not admitting liability as part of the settlement with Ms. Mozie. This was echoed by Ms. Bryant's lawyer who stated "there is no judgment—no enrolled judgment and ergo there is no finding of negligence on the part of Mrs. Bryant."

17. Counsel for Ms. Bryant stated that this was to "be a 50 percent credit to any judgment entered in favor of Ms. Mozie against Sears." Counsel for Ms. Mozie stated that whatever the credit would be, Ms. Bryant would not have to make any further contribution. Sears was not a party to the settlement agreement.

18. Ms. Bryant's claim against Sears remained outstanding. Her lawyer stated "we fully expect that Mrs. Bryant unless a jury should return a verdict in her claim against Sears before Your Honor now—unless that should happen that Mrs. Bryant would then be able to proceed with her claim against Sears at a later time."

ploys an interest analysis to conflict of law questions: "we balance the competing interests of the two jurisdictions, and apply the law of the jurisdiction with the more 'substantial interest' in resolution of the issue"); *Blair v. Prudential Ins. Co. of America,* 153 U.S.App.D.C. 281, 284, 472 F.2d 1356, 1359 (1972). The release was signed and executed in the course of legal proceedings in a court in Maryland. It provides that its terms shall be governed by Maryland law. It is between a District of Columbia resident and a Maryland resident, concerning an automobile accident that occurred in Maryland. Although the situs of the alleged negligence by Sears occurred at a Sears store located in the District of Columbia, on balance, we conclude that Maryland has the greater interest in the interpretation of a release entered in a proceeding in the Maryland courts under Maryland law.

■■■■■■ The Maryland statute on joint tortfeasor settlement agreements provides that:

> A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides; but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid.

MD.ANN.CODE art. 50, § 19 (Supp.1991). The Maryland statute is in derogation of the common law where there was no right of contribution among joint tortfeasors. A release of one of several joint tortfeasors released all. *Swigert v. Welk, supra* note 15, 133 A.2d at 431. The comments to the Uniform Act on Contribution Among Tortfeasors, which was adopted in Maryland, indicate that the drafters were concerned about the inequitable distribution that

could result from a plaintiff choosing whom to sue:

> By refusing to sue or take judgment against one or more of several tortfeasors commonly liable to suffer judgment, even though trial would have proven them equally responsible with him against whom judgment was taken, the injured person may confer immunity from contribution and at the same time secure complete compensation from the luckless tortfeasor whom he wishes to hold liable.

UNIF. CONTRIBUTION AMONG TORTFEASORS ACT, 12 U.L.A. 61 (1955) (Commissioners' Prefatory Note (1939 Act)). The statute changed this.[19] The statute makes clear that regardless of whether a release was agreed to before or after the plaintiff obtains a judgment against the non-settling defendant, the non-settling defendant has a right, unless the release provides to the contrary, to seek contribution from the settling defendant or non-party who is found liable as a joint tortfeasor or where the release provides that the settling defendant shall be deemed to be a joint tortfeasor. MD.ANN.CODE art. 50, §§ 17, 19, 20 (Supp. 1991); *see St. Louis v. Beckles,* 81 Md.App. 41, 566 A.2d 787, 790 (1989); *Montgomery County v. Valk,* 317 Md. 185, 562 A.2d 1246, 1253 (1989). The statute defines a joint tortfeasor as "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." MD.ANN. CODE art. 50, § 16; *see also Hall, Hall & Peele v. George Fuller Co.,* 621 A.2d 848, 850 (D.C.1993). The question is whether Ms. Bryant was a joint tortfeasor under the statute. If she was, then under Maryland law Sears is entitled to a credit.

■■■■ Sears maintains, and the trial judge ruled, that because the Maryland jury had reached a partial verdict finding Ms. Bryant liable, she is a joint tortfeasor. Under the Maryland statute, a finding of

**19.** In *Swigert v. Welk, supra* note 15, 133 A.2d at 431, the court noted that it had held, even before the passage in Maryland of the Uniform Contribution Among Tortfeasors Act, that "if several persons be involved in an accident and one of those persons, who has been guilty of no negligence, obtains for himself alone a release from the injured party, it does not affect the liability of the others." (Citations omitted).

liability does not require the entry of a judgment. In *Swigert v. Welk, supra* note 15, 133 A.2d at 431, the Maryland Court of Appeals interpreted the statute in a manner that for someone to be liable as a joint tortfeasor "[c]learly something short of an actual judgment will suffice; we think it equally clear that a denial of liability will not." In that case, the court adopted the rule in *Davis v. Miller*, 385 Pa. 348, 123 A.2d 422, 424 (1956), pointing to the need for a settling party to remain in the case in order to permit a determination of his or her liability as a joint tortfeasor. *Swigert v. Welk, supra* note 15, 133 A.2d at 433.

 Appellant, in turn, relies on *St. Louis v. Beckles, supra,* 566 A.2d at 790, as reaffirming the proposition that when "releases condition[ ] the contracted-for reduction on a judicial finding of joint liability, and ... neither settling defendant was ever found liable, neither remaining defendant [is] entitled to a reduction in the verdict against it." In that case, Ms. St. Louis sought a reduction in the judgment equal to a pro rata share of the amount paid by the co-defendant (Dierks) to the plaintiffs. The outcome turned on the "plain and unambiguous" language in the release that established the settling defendant (Dierks) as a joint tortfeasor. *Id.* ("the release contains an unconditional promise to reduce a judgment against the [defendant] 'to the extent of the statutory *pro-rata* share of the [settling defendant]' "). Hence, the court held that a subsequent jury determination of non-liability of the settling defendant (Dierks) did not relieve the plaintiffs from the duties they assumed under the release at the time that they agreed to it. *Id.* 566 A.2d at 791. In two cases discussed in *St. Louis v. Beckles, supra,* 566 A.2d 787, neither settling defendant was ever found liable, and in the absence of language in the releases establishing their status as joint tortfeasors, there could be no contribution. *Id.* 566 A.2d at 790 (citing *Allgood v. Mueller,* 307 Md. 350, 513 A.2d

915, 919 (1986), and *C & K Lord Inc. v. Carter,* 74 Md.App. 68, 536 A.2d 699, 701–02 (1988)). Thus, it is clear that the Maryland courts give effect to the language in the parties' release, *see, e.g., Allgood v. Mueller, supra,* 513 A.2d at 919, so that if the release requires a judicial determination of liability of the settling defendant as a joint tortfeasor, then in the absence of such a determination, the non-settling defendant does not have a right to contribution from the settling defendant. This is consistent with the purpose underlying the Maryland statute, to assure that there is contribution only among joint tortfeasors and not volunteers. *See Montgomery County v. Valk, supra,* 562 A.2d at 1253.

 In the instant case there is no dispute that Ms. Bryant's liability as a joint tortfeasor was not proven at any trial that occurred subsequent to the parties' release. Sears, therefore, can rely only on a jury finding of Ms. Bryant's liability that occurred prior to the signing of the release agreement. The plain language of the release made clear, however, that Ms. Bryant denied that she was a joint tortfeasor and that a right to contribution in Sears' favor would arise only upon a subsequent judicial determination of Ms. Bryant's liability. Hence, in the absence of such a subsequent determination, Sears was not entitled to a *pro rata* credit against the verdict in the instant case. While the parties may not "by their agreement restrict the benefit which the statute says flows from that release to the non-settling defendant who is not a party to the agreement," *Martinez v. Lopez,* 300 Md. 91, 476 A.2d 197, 201 (1984), the terms of the agreement are controlling insofar as there must be proof subsequent to the signing of the release that Ms. Bryant was a joint tortfeasor. *See Allgood v. Mueller, supra,* 513 A.2d at 919. Therefore, the trial judge erred in granting Sears a credit against the damages verdict returned by the jury in the instant case.[20]

---

**20.** The release only entitled Sears to a *pro rata* credit. Thus, in view of the verdict of $37,-500.00 and the release settlement for $80,000.00, Sears was entitled to a *pro rata* (or fifty percent) credit of $58,750, or half of the total of $117,-500.00. *See St. Louis v. Beckles, supra,* 566 A.2d at 792 (defining *pro rata* share). The judge's granting of an $80,000.00 credit was, in view of our disposition, harmless error.

■ Accordingly, we affirm the judgment in appellant's favor and reverse the denial of the motion for a new trial to the extent that Sears was allowed a credit against the judgment.[21]

---

**21.** Appellant's remaining contentions are meritless. We treat appellant's contention that, under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), Sears impermissibly struck Juror Waller on the basis of race, as a claim under *Edmonson v. Leesville Concrete Co., Inc.*, —— U.S. ——, ——, ——, 111 S.Ct. 2077, 2088–89, 114 L.Ed.2d 660 (1991) (adopting *Batson v. Kentucky* criteria for establishing a prima facie case of discrimination in a civil case). Appellant has failed to meet her burden. *See Batson v. Kentucky, supra,* 476 U.S. at 96, 106 S.Ct. at 1722; *Little v. United States,* 613 A.2d 880, 884–85 (D.C.1992); *Nelson v. United States,* 601 A.2d 582, 590 (D.C.1991). The voir dire shows that race was not the basis of Sears' challenge to the juror. Sears did not single out this juror. Rather, the juror came forward on his own because he was concerned that his nervousness might impair his ability to serve on the jury, and Sears' counsel's questions were directed to this condition of nervousness. There is no record indication that there was any racial motivation for the strike.

Nor did the trial judge err in denying appellant's motion for a directed verdict on the issue of liability. As the trial judge noted, the experts were not, as appellant maintains, in complete agreement about liability. There was at least disagreement on whether or not a non-negligent mechanic would know that a knocking sound would indicate a problem with the master cylinder. *See Vuitch v. Furr,* 482 A.2d 811, 813, 814 (D.C.1984). Furthermore, in view of the jury's finding of liability against Sears, this issue is moot.