**Jane DOE, Appellant/Cross–Appellee,**

**v.**

**GEORGETOWN CENTER (II), INC., et al., Appellees/Cross–Appellants.**

**Nos. 94–CV–607, 94–CV–687 and 94–CV–743.**

District of Columbia Court of Appeals.

Argued Feb. 3, 1998.

Decided March 5, 1998.

Jonathan E. Halperin, with whom Patrick M. Regan, Washington, DC, was on the brief, for appellant/cross-appellee.

Dawn E. Boyce, with whom Stephen A. Horvath, Fairfax, VA, was on the brief, for appellee/cross-appellant the Observatory of Georgetown.

Kenneth G. Roth, Fairfax, VA; for appellees/cross-appellants Georgetown Center (II), Inc. and K & M Properties, Inc.

Before FARRELL and RUIZ, Associate Judges, and KERN, Senior Judge.

FARRELL, Associate Judge:

Before us are an appeal and cross-appeals stemming from a jury verdict in favor of plaintiff-appellant, denominated Jane Doe, for injuries suffered in an assault by a third party for which she sought to hold liable in negligence the three defendants, who are owners or managers of the building and surrounding area where the assault took place. Doe contends that the jury's award of damages was inadequate as a matter of law and that the trial court erroneously instructed the jury, as to two defendants found not liable, that the test of liability was gross negligence rather than ordinary negligence. We reject the first contention and conclude that we need not reach the second. We also reject the argument on cross-appeal of defendant the Observatory of Georgetown that the evidence was legally insufficient to support

the finding of liability as to it. We therefore affirm the judgment of the Superior Court.[1]

## I.

Doe was the owner, with her parents, of a residential condominium at the Observatory, a condominium building on Wisconsin Avenue, N.W. In May 1991 she was assaulted by an unknown person in the elevator lobby adjoining the fourth level (G4) of an underground parking garage beneath the Observatory. She sued the condominium unit owners' association (hereafter the Observatory) for negligence, alleging that it had failed to maintain proper security in the G4 parking level over which it had exclusive control under an easement from the garage owner. She also sued the owner of the garage, Georgetown Center (II), Inc., and its property manager, K & M Properties, Inc., for negligence in allowing a garage door at the G2 level to remain open and inoperable for an extended length of time. Doe's theory was that the assailant had entered the building through the G2 level garage door and made his way into the G4 level possibly through a stairway and doors that the Observatory had left unsecured.

The easement from Georgetown Center (II) to the Observatory gave the latter exclusive use of the G4 parking level for residents of the condominium. In return, the easement limited the liability of Georgetown Center (II) "for any injury, loss or damage resulting from the exercise of [the] easement" to conduct that amounted to "gross negligence or willful disregard for the safety of others." As to Georgetown Center (II) and K & M, therefore, the trial judge instructed the jury that the standard of liability was gross negligence; as to the Observatory, it was ordinary negligence. With respect to damages, the jury was told, inter alia, that Doe could "be made whole only once. You must determine what amount will fairly and reasonably compensate [Doe] for her damages, and return a verdict in that amount." The jury found Georgetown Center (II) and K & M not liable. It found the Observatory liable and awarded damages of $10,000.

## II.

At trial, Doe presented evidence that, over a twenty-minute period, the assailant seized and dragged her from the elevator lobby into the garage where he beat her repeatedly, used a knife to push up her dress, attempted to force her to commit sexual acts, and threatened to kill her before she was able to escape. As a result, she received several fractured teeth and a broken nose which required cosmetic dentistry and two sinus operations, and suffered enduring emotional injuries. Following the verdict, she moved for a new trial on the ground that the jury's award of damages was inadequate as a matter of law. She argued that "[t]he only plausible explanation for the extremely inadequate verdict was that the jury engaged in an impermissible comparative negligence analysis," apportioning damages between the Observatory and the two defendants found not liable. The trial court denied the motion, and Doe renews her challenge to the damage award on appeal.

■ Doe's burden is a formidable one:

[I]n reviewing the denial of a motion for a new trial based on a claimed inadequate verdict, this court will reverse only when the amount of the award evidences prejudice, passion or partiality on the part of the jury or where the verdict appears to be an oversight, mistake, or [the result of] consideration of an improper element. An appellate court should order a new trial only when the award is *contrary to all reason.*

*Prins–Stairs v. The Anden Group,* 655 A.2d 842, 843 (D.C.1995) (citations omitted; emphasis in original). As our decisions point out, this "very restricted review of such [denials]" stems from a twofold deference:

The first ... is the deference due the trial judge, who has had the opportunity to observe the witnesses and to consider the evidence in the context of a living trial rather than upon a cold record. The second ... is the deference properly given to

1. Because of our disposition of Doe's appeal, we have no occasion to reach the issues presented by the cross-appeals of the defendants Georgetown Center (II), Inc. and K & M Properties, Inc.

the jury's determination of such matters of fact as the weight of the evidence and the quantum of damages. This second factor is further weighted by the constitutional allocation to the jury of questions of fact. *Hughes v. Pender,* 391 A.2d 259, 263 (D.C. 1978) (quoting *Taylor v. Washington Terminal Co.,* 133 U.S.App. D.C. 110, 113, 409 F.2d 145, 148, *cert. denied,* 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 85 (1969)).

Doe first argues that the deference normally accorded the trial judge's post-trial role in evaluating a damage award is misplaced here. The judge, in determining that "the award by this jury was within the range of damages reasonable jurors were free to award," explained that "plaintiff was fortunate and escaped from her attacker." Doe asserts that this was an improper consideration, pointing out that the jury was told to base any award of damages on the injuries she actually suffered, not her failure to suffer worse damages—the fact, for example, that she was not raped. We agree that any notion that "it could have been worse" would not be a reason to discount the injuries Doe actually suffered. Whether that appropriately characterizes the judge's explanation, however, is a moot issue. The question we must decide is whether the *verdict* was affected by passion, partiality, mistake, or consideration of an improper element. *Prins–Stairs, supra.* The judge's justification for it may counsel somewhat less than the usual deference owed his ruling, but coming as it did after the jury verdict, it provides no reason to suspend the deference we owe the jury's findings as reflected in its award.

■ Doe's main contention is that the jury was misled into apportioning damages between the Observatory and the other defendants by an instruction which the trial judge gave. That instruction [2] stated:

If you find that the defendant was negligent, but that his negligence was not the proximate cause of the damages *to the extent* claimed by the plaintiff, then the plaintiff may recover *only the portion of the damages* which resulted proximately from the defendant's negligence. [Emphases added.]

In a multiple defendant case, Doe argues, this instruction introduced improper considerations of comparative fault. There are three answers to Doe's contention. First, she never objected to the instruction. *See Miller v. Avirom,* 127 U.S.App. D.C. 367, 369–70, 384 F.2d 319, 321–22 (1967) ("Questions not properly raised and preserved during the proceedings under examination . . . will normally be spurned on appeal") (footnotes omitted). Second, although in isolation the instruction might seem to encourage apportionment of fault among defendants, it was embedded in a larger framework of instructions which also told the jury, among other things:

Now, there may be more than one proximate cause of injury. That is, several negligent acts may be working together. Each person whose negligent act [3] is a proximate cause of an injury is responsible. . . . It is no defense that some other person in this action participated in causing the injury, even if it should appear to you the negligence of the other person was greater.[4] . . . The number of defendants shouldn't influence the amount of your verdict.

Considering the jury instructions as a whole, as we assume the jury did, *see* Standardized Civil Jury Instructions, *supra* note 2, No. 1–5 (the jury was instructed accordingly),[5] we are satisfied that they did not invite the jury to discount the causal role of the Observatory—or the damages attributable to it—to the extent the other defendants may have contributed to Doe's harm.

■ Finally, and most importantly, the jury had objective reason for assessing the damages at the amount it did. Although Doe was the victim of a brutal attack that result-

---

**2.** *See* Standardized Civil Jury Instructions for the District of Columbia, No. 12–2 (1981).

**3.** Here the trial judge interpolated: "in the case of Observatory, negligent act, in the case of the other parties, . . . a grossly negligent act."

**4.** *See* Standardized Civil Jury Instructions, *supra* note 2, No. 5–13.

**5.** *Cf. Holder v. District of Columbia,* 700 A.2d 738, 743–44 (D.C.1997).

ed in physical injuries, she introduced no medical bills or expenses for the jury to consider in assessing the magnitude of the injuries. Since she was a student at the time, she made no claim for lost wages or loss of future earning capacity. Further, although she also suffered emotional injury, there was evidence that she rebounded quickly. She studied for and passed two bar examinations, secured and was succeeding at a position as an attorney, and vacationed with friends. She sought only minimal psychological counseling. Although we do not minimize the physical and emotional injuries Doe experienced, this record makes it impossible for us to hold that the jury's award of damages was "contrary to all reason." *Prins–Stairs,* 655 A.2d at 843. *See also Mozie v. Sears Roebuck & Co.,* 623 A.2d 607, 615 (D.C.1993); *Mantis v. Ashley,* 391 A.2d 267, 268–69 (D.C.1978); *Luck v. Baltimore & Ohio R.R. Co.,* 166 U.S.App. D.C. 283, 288, 510 F.2d 663, 668 (1975). We therefore sustain the jury's award.

### III.

Doe also contends that the trial court's decision to instruct the jury on gross negligence as to Georgetown Center (II) and K & M(1) unfairly surprised her and (2) was error in any case because the limitation-of-liability clause in the easement on which the instruction was based violated public policy.[6] We find it unnecessary to reach these points. Even if we were to agree that the case should have been submitted to the jury on ordinary negligence as to all defendants, Doe would be entitled to no relief. We have rejected her argument that the jury apportioned responsibility—and hence damages—

for her injuries as between the respective defendants (including the two found not liable). It follows that the jury, in awarding her $10,000, obeyed the trial court's instruction that "[t]he plaintiff may be made whole only once. You must determine what amount will fairly and reasonably compensate [Doe] for her damages, and return a verdict in that amount."[7] The written verdict form confirmed this instruction by providing a single space for the jury to enter the "amount of damages, if any, ... proximately caused [Doe] by the incident in suit."

■ "[A] cardinal principle of law is that, in the absence of punitive damages, a plaintiff can recover no more than the actual loss suffered." *Reid v. District of Columbia,* 391 A.2d 776, 777 (D.C.1978); *see also Woodward & Lothrop v. Hillary,* 598 A.2d 1142, 1146–47 (D.C.1991). Because the jury's verdict was intended to compensate Doe for the actual injury she suffered, a new trial on liability as to Georgetown Center (II) and K & M would afford her no additional relief. Any error in the instructions on liability was therefore harmless.[8]

*Affirmed.*

---

**6.** At oral argument Doe also raised the issue of whether the written easement extended the protection of a gross negligence standard to K & M as agents of Georgetown Center (II), since K & M's name appears nowhere on the easement.

**7.** The instruction continued: "The verdict will simply ask you to state, if you get that far, what damages you find she suffered and the parties will then be responsible for paying that sum."

**8.** At oral argument the Observatory essentially waived its cross-appeal in the event Doe's challenges to the verdict are rejected. In any case, we reject the Observatory's argument that the

trial court erred in denying its motion for summary judgment and for judgment as a matter of law at the close of Doe's case. There was evidence fairly permitting the jury to find that the Observatory owed Doe a duty of care in maintaining the security of the G4 level, that the third-party conduct resulting in her injury was foreseeable, *see Clement v. Peoples Drug Store,* 634 A.2d 425, 428 (D.C.1993), and that the Observatory's breach of its duty proximately caused Doe's injury. *See Kline v. 1500 Massachusetts Ave. Apt. Corp.,* 141 U.S.App. D.C. 370, 439 F.2d 477 (1970); *see also District of Columbia v. Doe,* 524 A.2d 30 (D.C.1987).