**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Allen E. NORTHERN, Jr., Defendant-Appellant.**

**No. 15469.**

United States Court of Appeals
Sixth Circuit.

March 27, 1964.

Certiorari Denied June 22, 1964.
See 84 S.Ct. 1915.

John J. Hooker, Jr., and Frank C. Ingraham, Nashville, Tenn., Quentin L. Housholder, James C. Kirby, Jr., Nashville, Tenn., on brief; Hooker, Hooker & Willis, Nashville, Tenn., of counsel, for appellant.

Carroll D. Kilgore, Asst. U. S. Atty., Nashville, Tenn., Kenneth Harwell, U. S. Atty., Nashville, Tenn., on brief, for appellee.

Before WEICK, Chief Judge, EDWARDS, Circuit Judge, and PECK, District Judge.

PER CURIAM.

Appellant Northern was tried and convicted by a jury in the District Court on Count 3 of an indictment charging him with wilfully attempting to evade a large portion of his income tax due for the year 1956 in violation of Section 7201 of the Internal Revenue Code of 1954. (26 U. S.C. § 7201) He was acquitted on Counts 1 and 2 which charged evasion of his income taxes for the years 1954 and 1955. He was sentenced to imprisonment for one year and fined $2,000. His first trial had resulted in a disagreement and mistrial. The conviction occurred in his second trial.

Northern was engaged in the amusement machine business, maintaining coin-operated music and pinball machines in restaurants and other places in the area of Nashville, Tennessee.

The Government's proof was by the net worth and expenditures method which showed increases in net worth of $12,058.45 for 1954, $24,422.06 for 1955 and $21,896.61 for 1956. Under this method the taxable unreported income amounted

to $11,289.29 in 1954, $24,684.66 in 1955 and $20,855.12 in 1956.

The Government offered evidence tending to prove that during the tax years in question, Northern did not report in his income tax returns collections from machines at a number of locations; that in 1956, pursuant to an agreement made by Northern with a location owner named Estes, collection tickets on machines at Estes' place of business were falsified by Northern's employee Green to show only one half of the actual moneys collected from the machines, the undisclosed one half being divided between Northern and Estes and not included in the income tax returns of either of them.

Late in 1956 Estes discontinued the use of Northern's machines and they were removed from the location. Green left Northern's employ.

The Government offered proof that in 1957, which was subsequent to the indictment years, Northern's machines were reestablished in Estes' place of business. Northern personally made the collections from these machines writing on the collection tickets only one half of the moneys collected and dividing the other half with Estes. This was done without any discussion of the subject by Northern with Estes.

■ Northern strenuously objected to the introduction of this 1957 evidence and it was admitted solely as reflecting upon Northern's knowledge of the prior practice in the indictment years. The voluntary resumption by Northern in 1957 of the practice during the indictment years without any new agreement or understanding with the location owner tended to prove knowledge and authorization by Northern of the concealments which took place in the tax years in question. We think this testimony was admissible. Grant v. United States, 255 F.2d 341 (CA 6), cert. denied 358 U.S. 828, 78 S.Ct. 48, 3 L.Ed.2d 68; Gordon v. United States, 164 F.2d 855 (CA 6), cert. denied 333 U.S. 862, 68 S.Ct. 741, 92 L.Ed. 1141.

It was further contended that the Government, in its opening net worth statement, should have allowed a larger figure for cash on hand and for the value of the machines in inventory. Cash in the amount of $15,000 was allowed in the statement which was the largest amount of cash which Northern, prior to the trial, claimed he had on hand. This conformed to testimony which Northern had given at a formal hearing before the trial. Northern argued that he also had on hand about $1,700 additional in cash as an operating fund for which he was given no allowance and that he signed a statement in 1959 that he carried as much as $3,000 in cash. He was allowed $1,500 as an operating fund in the net worth statement for the opening of 1954 and this was carried in the statement for the years 1955 and 1956. The jury could have found from the evidence that these claimed amounts of additional cash were included in the item of $15,000 at the beginning of 1953 which was allowed to Northern in the net worth statement.

Relative to the machines on hand, the Government obtained the figure of $9,804.80 which it used in the opening net worth statement from Northern's own 1953 income tax return. This admission was corroborated by his 1951, 1952, 1954 and 1955 income tax returns, some of which were prior to the commission of the offenses charged, and by an audit of his 1954 and 1955 tax returns which was made in 1956. This audit had been accepted as correct by Northern. Comparing the pre-indictment with the indictment years, the allowance for the machines does not appear to us to be an unreasonable estimate.

The value of the machines on hand was important only for depreciation purposes. In checking the new purchases over a three year period from 1950 to 1953 only a gain of one machine was revealed.

■ In any event, even if additional amounts for cash and for the value of the machines were allowed in the net worth statement as claimed by Northern, they would not materially affect the large

shortage in reported income in his return for the year 1956.

We find no merit in the claim that Northern's records were illegally obtained by the Government. The District Judge in determining the motion to suppress evidence found that Northern had voluntarily surrendered his records to the Internal Revenue agent for examination. In our judgment, there was substantial evidence to support this finding. We find no inconsistency in the verdicts of the jury.

The judgment of conviction is affirmed.