Heidi MILLER–LAGRO,
et al., Respondents,

v.

NORTHERN STATES POWER
COMPANY, et al., pet.
Appellants.

No. C2–97–168.

Supreme Court of Minnesota.

July 30, 1998.

Timothy R. Thornton, Jack Y. Perry, Briggs & Morgan, P.A., Harold J. Bagley, NSP Senior Attorney, Minneapolis, for Northern States Power Co.

Paul A. Banker, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, for Asplundh Tree Co.

Ronald I. Meshbesher, Kontandinos Nicklow, Meshebesher & Spence, Ltd., Minnetonka, for respondent.

Phillip A. Kohl, John T. Hareid, Christian & Peterson, P.A., Albert Lea, Christopher B. Clark, Interstate Power Co., Dubuque, IA, for amicus curiae Interstate Power Co.

Carla J. Heyl, League of Minnesota Cities, Harold LeVander, Jr., Maun & Simon, PLC, St. Paul, for amicus curiae Minnesota Rural Elec. Ass'n.

Priscilla McNulty, Senior Atty., Minnesota Power & Light Co., Duluth, for amicus curiae Minnesota Municipal Utilities Ass'n.

Todd J. Guerrero, Otter Tail Power Co., Fergus Falls, for amicus curiae Otter Tail Power Co.

## OPINION

STRINGER, Justice.

When Heidi Miller–Lagro and Kent Lagro returned to their home in Medicine Lake on the afternoon on October 21, 1992, they were shocked to discover that Northern States Power Company and Asplundh Tree Company had cut down several trees that were located on the city right-of-way between their lot and the paved roadway. Legal proceedings ensued, and we now consider whether and under what circumstances a private landowner may recover from a public utility for the removal of trees located on abutting public property. We conclude that the Lagros have standing under the common law and under Minn.Stat. § 561.04 (1996) and remand the case for a determination of whether the removal was reasonable and necessary for the purpose of constructing, using, operating, or maintaining the utility lines.

The Lagros live at 178 Peninsula Road in Medicine Lake, Minnesota. Miller–Lagro has owned the property since 1978 and Lagro moved to the home in 1989 and married Miller–Lagro in 1991. This saga begins on October 20, 1992, when the Lagros found a document from Northern States Power Company (NSP) attached to their garage door handle. The document read: "Tree Trimming is REQUIRED" and listed four trees near the Lagros' mailbox that NSP wanted to remove and three other trees that NSP wanted to trim. The form requested that the owner sign a grant of permission to allow an NSP contractor to trim and remove trees around power lines. Lagro did not sign the permission form and instead wrote "Trim only what is necessary I don't want anything cut down. Kent Lagro." (Emphasis in original.) According to the Lagros' affidavits, the next day NSP's contractor, Asplundh Tree Company, initially trimmed the trees but later cut them down after authorization from Dean Poll, a tenant at the Lagro residence.

The Lagros sued NSP and Asplundh in Hennepin County Conciliation Court. NSP and Asplundh submitted surveys that indicated the trees were on land that was dedicated as public roadway in 1887 and property of the City of Medicine Lake—not on the Lagros' property. The conciliation court denied the Lagros' claim.

The Lagros appealed, removing the case to district court. NSP and Asplundh moved for summary judgment based on the Lagros' lack of standing because the trees removed were not on the Lagros' property. To support their motion, NSP and Asplundh submitted a survey of the land around the Lagros' house and affidavits from the surveyors stating that the trees were located on the Medicine Lake right-of-way. The Lagros countered that they did have standing, citing Minn.Stat. § 561.04 (1996): "[w]hoever without lawful authority cuts down or carries off any * * * tree * * * on the land of another person, *or in the street or highway in front of any person's house,* * * * is liable in a civil action to the owner of such land." (Emphasis added.) The district court granted NSP's and Asplundh's motion for summary judgment, interpreting section 561.04 to provide recovery only to "the owner of such land" where the trees were located. The district court concluded that the Lagros lacked standing and could not recover because the trees were not located on their property.

On the Lagros' appeal to the court of appeals, the court reversed on the issue of standing and remanded the case for further proceedings on the issue of whether NSP had lawful authority to cut down the trees. Examining the plain language of section 561.04, the court held that it protects the Lagros' interest in the trees in front of their house, irrespective of the fact that the trees

were on public property abutting their land. The court rejected the district court's interpretation of the statute, reasoning that if only the owner of the land where the trees were located could recover, the phrase "or in the street or highway in front of any person's house" would be meaningless. The court also held that requiring NSP to obtain permission from abutting landowners would not render an absurd result and in fact would be consistent with NSP's current practice of seeking permission, and was also consistent with the common law recognition of a landowner's rights in trees on public rights-of-way abutting the landowner's property.

We begin our analysis by acknowledging the delicate and sometimes conflicting balance between a public utility's responsibility to provide safe, efficient and reliable power [1] and a landowner's reasonable interest in protecting trees and shrubbery on the landowner's property or on an abutting right-of-way.[2] This is yet another page in the volumes of thoughtful dissertation on the tensions between the rights of a private landowner and the need for public services in our local communities.[3]

■ The threshold issue here is whether the Lagros have standing to bring a claim for removal of the trees located on city property in front of their lot. NSP and Asplundh argue that only the city may recover for removal of trees from city land. We disagree. The common law long ago recognized a landowner's interest in trees located on abutting streets and highways.[4] In *St. Paul Realty*, a landowner recovered from a utility company whose negligent installation and inspection of telephone wires caused injury and destruction of trees in the boulevard adjacent to the landowner's property.[5] The court noted that the rights of the utility must be balanced against those of the abutting landowner, whose rights "from time immemorial have been recognized and deemed worthy of protection."[6] The historical recognition of these rights is noted in McQuillen, *The Law of Municipal Corporations:* "Even if the abutting owners do not own the fee of the street, they have a right in the nature of an easement to grow and maintain a shade tree in the street in front of their premises, and may maintain an action against a wrongdoer for injuring the tree, or removing it."[7]

Standing is also conferred in Minn.Stat. § 561.04 (1996), which provides:

Whoever without lawful authority cuts down * * * any * * * tree * * * on the land of another person, *or in the street or highway in front of any person's house* * * * is liable in a civil action to the owner of such land * * * for treble the amount of damages which may be assessed therefor * * * unless it appears that the trespass was casual or involuntary * * * in which case judgment shall be given for only the single damages assessed. (Emphasis added.)

■ We are to give effect to the plain meaning of a statute when the words are clear and free from ambiguity, and we construe a statute to give effect to all its provisions.[8] We hold that the plain language "in the street or highway in front of any person's house" is tied together with the "owner of such land"—so that the owner of the house the trees stood in front of has a cause of action for removal of the trees. If it were not so, the reference to "any person's house" would serve no purpose. The tie is further enhanced by the use of "person" in both "on the land of another person" and "in the street or highway in front of any person's house," conferring standing on abutting land-

---

1. Minn.Stat. § 216B.04 (1996).

2. *St. Paul Realty & Assets Co. v. Tri-State Tel. & Tel. Co.*, 122 Minn. 424, 142 N.W. 807 (1913).

3. *See, e.g., Castor v. Minneapolis*, 429 N.W.2d 244, 247 (Minn.1988); *Schwermann v. Reinhart*, 296 Minn. 340, 342, 210 N.W.2d 33, 35 (1973); *Dexner v. Houghton*, 153 Minn. 284, 289, 190 N.W. 179, 181 (1922).

4. *St. Paul Realty*, 122 Minn. 424, 142 N.W. 807.

5. *Id.*

6. *Id.* at 426, 142 N.W. at 807.

7. 10A McQuillen, *The Law of Municipal Corporations*, §§ 30.66–.68 (3d ed.1990).

8. *Tuma v. Comm'r of Econ. Security*, 386 N.W.2d 702, 706 (Minn.1986); Minn.Stat. § 645.16 (1996).

owners for loss of trees in the street or highway, in addition to the city. Thus we affirm the court of appeals holding that the Lagros have standing to bring an action for removal of trees from the public right-of-way in front of their property.

■ Most jurisdictions hold however, that "[t]he interest of the abutting owners in trees is subject only to the superior claims of the public."[9] Municipalities generally retain rights to trim or cut down trees in the "interest of public safety, convenience, or health" for such purposes as road improvement, convenience of travelers, and assisting the work of public utilities.[10] While the Lagros have a common law interest in the trees that stood on city land in front of their property,[11] that interest is subordinate to the right of the municipality—here exercised by NSP in its utility line maintenance function—to trim or cut the Lagros' trees in the performance of its public works.

■ NSP and Asplundh argue that Minn. Stat. § 222.37 and Medicine Lake Ordinance No. 63 grant NSP and its contractors blanket authority to remove trees and that they have no liability to landowners. Minnesota Statutes § 222.37, subd. 1 (1996) provides:

> Any * * * power company may use public roads for the purpose of constructing, using, operating, and maintaining lines, * * * and in the construction and maintenance of such line, * * * the company shall be subject to all reasonable regulations imposed by the governing body of any county, town or city in which such public road may be.

Medicine Lake Ordinance No. 63 grants NSP a franchise for 20 years with broadly stated rights: "the right and privilege of constructing, operating, repairing, and maintaining [an electric distribution system and transmission lines] in, on, over, under, and across the streets, alleys, and public grounds" of the city. We hold that the broad

grant of authority provided by § 222.37 and Ordinance No. 63 gives NSP the lawful right to trim or remove trees where the trimming or removal is reasonable and necessary "for the purpose of constructing, using, operating, and maintaining lines."[12] We therefore reverse the court of appeals' holding that permission of the landowner or "person" referenced in § 561.04 is required for trimming or removal of trees. The statute does not so provide, and it is not our role to impose conditions on the authority of NSP to trim or remove trees where the legislature has not done so.

■ We turn next to the Lagros' argument that because Medicine Lake Ordinance No. 63 discusses only trimming—not removal—of trees, NSP acted outside of its authority. Section 3 of the ordinance goes on to provide:

> There is also granted to [NSP], during the term hereof, permission and authority *to trim all trees* and shrubs in the streets, alleys, and public grounds of said City which may interfere with the proper construction, operation, repair, and maintenance of any poles, pole lines, and fixtures and appurtenances, installed in pursuance of the authority hereby granted, provided that the Company shall save said City harmless from any liability in the premises. (Emphasis added.)

We do not read the ordinance so narrowly. Unless we are to construe trimming to also include the cutting of trees, a conflict would arise between the broad grant of authority to maintain the utility lines in subdivision 1 and the terms of subdivision 3 that appear to be largely directed toward indemnification. We conclude that the use of the term "trim" in subdivision 3 does not prohibit NSP's authority from extending to the removal of trees.

We therefore hold that NSP had lawful authority to remove the Lagros' trees if the removal was reasonable and necessary to

9. McQuillen, at § 30.66.

10. *Id.* at § 30.67.

11. *See also Foote v. City of Crosby*, 306 N.W.2d 883 (Minn.1981); *West v. Village of White Bear*, 107 Minn. 237, 119 N.W. 1064 (1909); *Stretch v.*

*Cassopolis*, 125 Mich. 167, 84 N.W. 51 (1900); *Weller v. McCormick*, 52 N.J.L. 470, 19 A. 1101 (1890); *Dailey v. State*, 51 Ohio St. 348, 37 N.E. 710 (1894).

12. Minn.Stat. § 222.37, subd. 1.

construct, use, operate, or maintain its power lines and we remand this case to the district court to make that determination.

Affirmed in part, reversed in part, and remanded.

GILBERT, J., took no part in the consideration or decision of this case.